377 S.E.2d 139

**STATE of West Virginia ex rel.
CITY OF PRINCETON**

v.

**Harold L. BUCKNER, Magistrate
of Mercer County.**

No. CC972.

Supreme Court of Appeals of
West Virginia.

July 1, 1988.

Rehearing and Reargument
Denied Dec. 21, 1988.

458

Deborah Garton, Silas B. Taylor, Deputy Atty. Gen., Princeton, for the State.

Robert E. Holroyd, Princeton, for Harold L. Buckner.

Roger D. Curry, Fairmont, Robert Dowlut, Washington, D.C., for amicus curiae Nat'l Rifle Ass'n.

McHUGH, Chief Justice:

This action is before this Court upon two certified questions from the Circuit Court of Mercer County. This action concerns the constitutionality of *W. Va. Code*, 61–7–1 [1975], relating to the carrying of certain types of dangerous or deadly weapons without a license, in light of the adoption of article III, section 22 of the *West Virginia Constitution*, commonly referred to as "The Right to Keep And Bear Arms Amendment," and whether the legislature may reasonably regulate the right of a person to keep and bear arms in West Virginia. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.[1]

I

The facts in this case are uncontroverted. On March 10, 1987, a municipal police officer in the City of Princeton, in Mercer County, stopped a vehicle and arrested the driver for driving under the influence of

---

1. This Court also has before it the brief of amicus curiae filed by the National Rifle Association of America.

alcohol. After searching the driver, the policeman discovered a .22 caliber automatic pistol inside the driver's jacket pocket. The driver was then asked to produce a license allowing him to carry such a weapon, and he subsequently advised the police officer that he did not have such a license.

The police officer presented these facts to a duly elected magistrate of Mercer County, and sought a warrant for the driver's arrest for the DUI offense. The respondent advised the officer that he would not issue a warrant for carrying a dangerous and deadly weapon against the driver, based upon the magistrate's conclusion that *W.Va.Code*, 61–7–1 [1975] violated article III, section 22 of the *West Virginia Constitution*.

The prosecuting attorney then filed a writ of mandamus in the Circuit Court of Mercer County requesting the court to compel the magistrate to issue a warrant against the driver for carrying a dangerous or deadly weapon without a license in violation of *W.Va.Code*, 61–7–1 [1975].

After a hearing on the matter, the circuit court concluded that when comparing *W.Va.Code*, 61–7–1 [1975] and *W.Va. Const.* art. III, § 22, the statute was in conflict with the subsequently adopted constitutional provision. The court further concluded that article III, section 22 of the State *Constitution* voided that part of *W.Va.Code*, 61–7–1 [1975] dealing with the carrying of firearms without a license. The court concluded that the legislature may, in some fashion, regulate the right to keep and bear arms so as not to conflict with *W.Va. Const.* art. III, § 22.

The court then certified the matter to this Court. The following questions were certified:

1. Is *W.Va.Code* Chapter 61, Article 7, Section 1 constitutional in light of the subsequent adoption of Article 3, Section 22 of the Constitution of West Virginia?

2. May the Legislature of the State of West Virginia by proper legislation regulate the right of a person to keep and bear arms in the State of West Virginia?

## II

This case involves the interpretation of article III, section 22 of the *West Virginia Constitution* and its effect on the constitutionality of the state's weapons statute, *W.Va.Code*, 61–7–1 [1975], which prohibits the carrying of a dangerous or deadly weapon without a license.[2] Because both of the questions certified to this Court are so closely associated, we choose to discuss them together.

Article III, section 22 of the *West Virginia Constitution* was approved by the voters of this State on November 4, 1986, and succinctly states: "A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

The State of West Virginia has had a long history of statutory provisions regulating the use of weapons. *See generally* McNeely, *The Right of Who to Bear What, When, and Where—West Virginia Firearms Law v. The Right–to–Bear–Arms Amendment*, 89 W.Va.L.Rev. 1125, 1127–41 (1987).[3] An 1882 statute is actually the first statutory provision which is similar to the statute now before us, *W.Va.Code*, 61–

---

**2.** *W.Va.Code*, 61–7–1 [1975] provides in pertinent part:

> If any person, without a state license therefor or except as provided elsewhere in this article and other provisions of this Code, carry about his person any revolver or pistol, dirk, bowie knife, slung shot, razor, billy, metallic or other false knuckles, or other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor, and, upon conviction thereof, shall be imprisoned in the county jail not less than six nor more than twelve months for the first offense; but

upon the conviction of the same person for the second offense in this State, he shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than five years, and, in either case, shall be fined not less than fifty dollars nor more than two hundred dollars[.]

**3.** A comprehensive discussion of the statutory, common law and general historic backdrop surrounding this amendment, as well as its possible impact on existing weapons statutes is detailed in this law review article.

7–1 [1975]. 1882 *W.Va. Acts* ch. 135, § 7.[4]

The 1882 statutory provision was interpreted by this Court in *State v. Workman*, 35 W.Va. 367, 14 S.E. 9 (1891). The Court in *Workman* considered several issues regarding the right to bear arms, including the constitutional right to self-defense, the constitutionality, under the due process clause, of the weapons statute in effect in West Virginia at that time and the definition of the term "arms" in the context of the second amendment to the *United States Constitution.*[5]

Despite language embodied in § 7 of the 1882 weapons statute which on its face appeared to grant the right of self-defense only to persons of "good character," *see* note 4, *supra,* the Court in *Workman* found that there was a constitutional right to self-defense guaranteed to all persons under both the due process clause of the fourteenth amendment to the *United States Constitution* and article III, section 1 of the *West Virginia Constitution.* 35 W.Va. at 370–71, 14 S.E. at 10–11.

After recognizing a constitutional right to self-defense, the Court addressed the general intent of the second amendment to the *United States Constitution* and determined that it involved the protection of keeping and bearing arms as a popular or collective right.[6] 35 W.Va. at 372–73, 14 S.E. at 11. The Court concluded that "to regulate a conceded [constitutional] right is not necessarily to infringe the same." *Id.* 35 W.Va. at 372, 14 S.E. at 11. In so holding, the Court compared a state's regulation of the right to keep and bear arms to the regulation of the freedoms guaranteed under the first amendment to the *United*

**4.** The 1882 statute, found in chapter 135, section 7 of the acts of the West Virginia Legislature provided as follows:

If a person carry about his person any revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metalic or other false knuckles, or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor, and fined not less than twenty-five nor more than two hundred dollars, and may, at the discretion of the court, be confined in jail not less than one, nor more than twelve months; and if any person shall sell or furnish any such weapon as is hereinbefore mentioned to a person whom he knows, or has reason, from his appearance or otherwise, to believe to be under the age of twenty-one years, he shall be punished as hereinbefore provided; but nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling house or premises any such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired, and back again. *And if upon the trial of an indictment for carrying any such pistol, dirk, razor or bowie knife, the defendant shall prove to the satisfaction of the jury that he is a quiet and peaceable citizen, of good character and standing in the community in which he lives, and at the time he was found with such pistol, dirk, razor or bowie knife, as charged in the indictment, he had good cause to believe and did believe that he was in danger of death or great bodily harm at the hands of another person, and that he was, in good faith, carrying such weapon for self defense and for no other purpose, the jury shall find him not guilty.* But nothing in this section

contained shall be so construed as to prevent any officer charged with the execution of the laws of the state from carrying a revolver or other pistol, dirk or bowie knife.

(emphasis added) We need not address the implications of the impermissible burden shifting to the defendant regarding the possession of arms for self-defense purposes. *See* syl. pt. 4, *State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374 (1978) (once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense); *see also Bowman v. Leverette,* 169 W.Va. 589, 595, 289 S.E.2d 435, 439 (1982).

**5.** The second amendment to the *United States Constitution* provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

**6.** We note that the Court in *Workman* interpreted the second amendment as though it was a restriction upon state as well as federal legislation. *Id.* 35 W.Va. at 372, 14 S.E. at 11. Of course, since our Court's holding in *Workman,* the Supreme Court of the United States has determined that the second amendment operates as a restraint solely upon the power of the national government and does not restrict the power of the states to regulate firearms. *Miller v. Texas,* 153 U.S. 535, 538, 14 S.Ct. 874, 875, 38 L.Ed. 812, 813 (1894). "*Workman* does not stand for the proposition that the second amendment extends to the states, but is rather a decision assuming, but not holding, that the second amendment did apply to the states." McNeely, *supra* at 1130 n. 29.

*States Constitution.* Thus, the Court implied that a constitutional guarantee or right to keep and bear arms would subject laws regulating protected arms to the same standard of scrutiny given laws regulating first amendment freedoms. McNeely, *supra* at 1130.

Significantly, the Court in *Workman* defined the term "arms" in a second amendment context as follows:

[I]n regard to the kind of arms referred to in the [second] amendment, it must be held to refer to the weapons of warfare to be used by the militia, such as swords, guns, rifles, and muskets—arms to be used in defending the State and civil liberty—and not to pistols, bowie-knives, brass knuckles, billies, and other weapons as are usually employed in brawls, street fights, duels and affrays, and are only habitually carried by bullies, blackguards, and desperadoes, to the terror of the community and the injury of the State.

35 W.Va. at 373, 14 S.E. at 11. Clearly, with this definition, the Court refused to include pistols as a constitutionally protected weapon pursuant to its second amendment analysis.

However, it is important to note that the definition of "arms" presented in *Workman* focuses on the "well regulated militia" language of the second amendment. No parallel language appears in our state constitutional amendment. Because the second amendment does not operate as a restraint upon the power of states to regulate firearms, *supra* note 6, the definition of "arms" set forth in *Workman* is not particularly helpful in the case now before us. Moreover, the broad language embodied in our current Right to Keep and Bear Arms Amendment makes any further reexamination of the *Workman* definition unnecessary.

In several cases where courts have considered the constitutionality of statutes and ordinances in light of constitutional provisions guaranteeing a right to bear arms for defensive purposes, proscriptive laws infringing on that constitutionally protected right have been voided. *See, e.g., City of Lakewood v. Pillow,* 180 Colo. 20, 23, 501 P.2d 744, 745–46 (1972) (ordinance prohibiting possession of dangerous or deadly weapon unconstitutionally overbroad where it prohibited activities which under police power could not be reasonably classified as unlawful); *In Re Brickey,* 8 Idaho 597, 599, 70 P. 609, 609 (1902) (statute prohibiting carrying of weapons in any manner in cities, towns or villages was unconstitutional); *People v. Zerillo,* 219 Mich. 635, 642, 189 N.W. 927, 929 (1922) (statute prohibiting possession of pistol by unnaturalized foreign born resident unconstitutional because of broad term "person" in the constitutional provision); *State v. Delgado,* 298 Or. 395, 403–04, 692 P.2d 610, 614 (1984) (constitutional right to bear arms violated by statute prohibiting mere possession and mere carrying of a switchblade knife); *State v. Blocker,* 291 Or. 255, 261–62, 630 P.2d 824, 827 (1981) (statute prohibiting possession of billy club in public unconstitutional infringement of right to bear arms); *State v. Kessler,* 289 Or. 359, 372, 614 P.2d 94, 100 (1980) (statute prohibiting possession of billy club in home unconstitutional infringement of right to bear arms); *State v. Rosenthal,* 75 Vt. 295, 299, 55 A. 610, 611 (1903) (ordinance prohibiting carrying dangerous concealed weapon without written permission of mayor or police chief unconstitutional).

The language embodied in art. III, § 22 of our State *Constitution* is sweeping, and we look to the well established rules of constitutional construction in order to ascertain its meaning.

At the outset we note that "[t]he fundamental principle in constitutional construction is that effect must be given to the intent of the framers of [the constitutional amendment] and of the people who ratified and adopted it." *State ex rel. Brotherton v. Blankenship,* 157 W.Va. 100, 108, 207 S.E.2d 421, 427 (1973); *see also* syl. pt. 4, *State ex rel. Smith v. Kelly,* 149 W.Va. 381, 141 S.E.2d 142 (1965); syl. pt. 4, *State ex rel. Morgan v. O'Brien,* 134 W.Va. 1, 60 S.E.2d 722 (1948). Unfortunately, no real statement of legislative intent is before us.

Questions of constitutional construction are governed by the same general

rules as those applied in statutory construction. *State ex rel. Brotherton v. Blankenship*, 157 W.Va. 100, 108, 207 S.E.2d 421, 427 (1973). It is a well established principle of constitutional construction that "[w]here a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and not construed." Syl. pt. 3, *State ex rel. Smith v. Gore*, 150 W.Va. 71, 143 S.E.2d 791 (1965). *See also Ray v. McCoy*, 174 W.Va. 1, 3, 321 S.E.2d 90, 92 (1984).

■ Moreover, a cardinal rule of statutory construction, which of course applies to the construction of constitutional provisions as well, is that a statute, or in this case a constitutional amendment, must be considered in its entirety, with effect given, if possible, to every word or phrase within the provision. *Diamond v. Parkersburg–Aetna Corp.*, 146 W.Va. 543, 553–54, 122 S.E.2d 436, 443 (1961). A constitutional amendment will supersede any inconsistent portions of antecedent constitutional or statutory provisions, as " 'the latest expression of the will of the people.' " *State ex rel. Kanawha County Building Commission v. Paterno*, 160 W.Va. 195, 203, 233 S.E.2d 332, 337 (1977). (citation omitted)

Because the constitutional provision in the case before us is clear and unambiguous, this Court must apply the amendment rather than construe it. *See* discussion *supra*. Thus, the meaning of a phrase or terms would generally be sought in the plain and ordinary meaning of the words themselves. *State ex rel. Dunbar v. Stone*, 159 W.Va. 331, 334–35, 221 S.E.2d 791, 793 (1976) (and cases cited therein).

■ *W. Va. Code*, 61–7–1 [1975] is written as a total proscription of the carrying of a dangerous or deadly weapon without a license or other authorization. *W. Va. Code*, 61–7–1 [1975] thus prohibits the carrying of weapons for defense of self, family, home and state without a license or statutory authorization. Article III, section 22 of the *West Virginia Constitution*, however, guarantees that a person has the right to bear arms for those defensive purposes. Thus, the statute operates to impermissibly

infringe upon this constitutionally protected right to bear arms for defensive purposes. *See City of Lakewood v. Pillow*, 180 Colo. at 23, 501 P.2d at 745. We discuss *infra* the legislature's power to *reasonably regulate* the exercise of the right to bear arms; however, *W. Va. Code*, 61–7–1 [1975] *prohibits* the exercise of this right by infringing upon the constitutional right to bear arms for the defensive purposes guaranteed in the amendment. *See In Re Brickey*, 8 Idaho at 599, 70 P. at 609.

In considering the constitutionality of a particular statutory proscription against the possession of a certain weapon in public in light of the right to bear arms amendment of the state, the Supreme Court of Oregon determined that the statute was overbroad and therefore unconstitutional. *State v. Blocker*, 291 Or. 255, 261, 630 P.2d 824, 827 (1981). The court's insightful discussion of the overbreadth doctrine is applicable in this case:

An 'overbroad' law, as that term has been developed by the United States Supreme Court, is not vague, or need not be. Its vice is not failure to communicate. Its vice may be clarity. For a law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited. A legislature can make a law as 'broad' and inclusive as it chooses unless it reaches into constitutionally protected ground. The clearer an 'overbroad' statute is, the harder it is to confine it by interpretation within its constitutionally permissible reach.

*Id.*

Based upon the foregoing, we conclude that the language embodied in *W. Va. Code*, 61–7–1 [1975] sweeps so broadly as to infringe a right that it cannot permissibly reach, in this case, the constitutional right of a person to keep and bear arms in defense of self, family, home and state, guaranteed by art. III, § 22. Accordingly, *W. Va. Code*, 61–7–1 [1975], the statutory proscription against carrying a dangerous or deadly weapon, is overbroad and violative of article III, section 22 of the *West Virginia Constitution*, known as the

"Right to Keep and Bear Arms Amendment." It infringes upon the right of a person to bear arms for defensive purposes, specifically, defense of self, family, home and state, insofar as it prohibits the carrying of a dangerous or deadly weapon for any purpose without a license or other statutory authorization.

The question remains whether the State may reasonably regulate the right of a person to keep and bear arms in this State.[7]

We stress that our holding above in no way means that the right of a person to bear arms is absolute. *See* cases cited *infra* 180 W.Va. at p. 464, 377 S.E.2d at p. 146. Other jurisdictions concluding that state statutes or municipal ordinances have violated constitutional provisions guaranteeing a right to bear arms for defensive purposes, though not specific in what ways this is to be done, have recognized that a government may regulate the exercise of the right, provided the regulations or restrictions do not frustrate the guarantees of the constitutional provision. *See, e.g., In Re Brickey*, 8 Idaho 597, 599, 70 P. 609, 609 (1902); *City of Las Vegas v. Moberg*, 82 N.M. 626, 627, 485 P.2d 737, 738 (Ct. App.1971). Particularly, on three occasions, the Supreme Court of Oregon, in

---

**7.** The principal statute involved in this portion of our discussion is *W.Va.Code,* 61-7-2 [1988], which delineates the procedures to obtain a license. *W.Va.Code,* 61-7-2 [1988] provides in pertinent part:

(a) Any person desiring to obtain a state license to carry any such weapon as is mentioned in the first section of this article, within one or more counties in this state, shall first publish a notice setting forth his name, residence and occupation, and that on a certain day he will apply to the circuit court of his county for such state license. Such notice shall be published as a Class I legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code, and the publication area for such publication shall be the county in which such person resides. Such notice shall be published at least ten days before such application is made. After the publication of such notice and at the time stated in such notice, upon application to such court, it may grant such license to such person, in the following manner, to wit:

(b) The applicant shall file with such court his application in writing, duly verified, which application shall show, as basic qualifications, as follows:

(1) That such applicant is a citizen of the United States of America;

(2) That the applicant has been a bona fide resident of this state for at least one year next prior to the date of such application, and of the county sixty days next prior thereto;

(3) That the applicant is over eighteen years of age; that he is a person of good moral character, of temperate habits, not addicted to intoxication, not addicted to the use of any controlled substance, and has not been convicted of a felony or of any offense involving the use on his part of such weapon in an unlawful manner, and shall prove to the satisfaction of the court that he is gainfully employed in a lawful occupation and has been so engaged for a period of five years next preceding the date of his application;

(4) The purpose or purposes for which the applicant desires to carry such weapon, the necessity therefor, and the county or counties in which such license is desired to be effective; and

(5) That the applicant has qualified under minimum requirements for handling and firing such firearms. These minimum requirements are those promulgated by the department of natural resources and attained under the auspices of the department of natural resources: Provided, That the court may waive this requirement in the case of a renewal applicant who has previously qualified.

(c) Upon the hearing of such application the court shall hear evidence upon all matters stated in such application and upon any other matter deemed pertinent by the court, and if such court be satisfied from the proof that there is good reason and cause for such person to carry such weapon, and all of the other conditions of this article be complied with, the court, or the judge thereof in vacation, may grant such license for such purposes, and no other, as such court, or the judge in vacation, may set out in the license (and the word 'court' as used in this article shall include the circuit judge thereof, acting either in term or vacation); but, before such license shall be effective such person shall pay to the sheriff, and the court shall so certify in its order granting the license, the sum of fifty dollars, and shall also file a bond with the clerk of such court, in the penalty of five thousand dollars, with good security, signed by a responsible person or persons, or by some surety company, authorized to do business in this state, conditioned that such applicant will not carry such weapon except in accordance with his application and as authorized by the court, and that he will pay all costs and damages accruing to any person by the accidental discharge or improper, negligent or illegal use of such weapon or weapons.

striking statutes as violative of the state's constitutional right to bear arms, has repeatedly stressed that the court's holdings should not be construed to mean that an individual has an "unfettered right" to possess or use constitutionally protected arms in any way he chooses. The Oregon court has consistently emphasized that the legislature may regulate such possession and use. *State v. Delgado*, 298 Or. at 403, 692 P.2d at 614; *State v. Blocker*, 291 Or. at 259, 630 P.2d at 826; *State v. Kessler*, 289 Or. at 370; 614 P.2d at 99.

■■■ The State, through exercise of its police power, is vested with the authority to enact laws, within constitutional limits, to promote the general welfare of its citizenry. *See generally State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965); syl. pt. 5, *Farley v. Graney*, 146 W.Va. 22, 119 S.E.2d 833 (1960). In syllabus point 5 of *Gainer*, this Court defines the State's police power as follows:

> The police power is the power of the state, inherent in every sovereignty, to enact laws, within constitutional limits, to promote the welfare of its citizens. The police power is difficult to define precisely, because it is extensive, elastic and constantly evolving to meet new and increasing demands for its exercise for the benefit of society and to promote the general welfare. It embraces the power of the state to preserve and to promote the general welfare and it is concerned with whatever affects the peace, security, morals, health and general welfare of the community. It cannot be circumscribed within narrow limits nor can it be confined to precedents resting alone on conditions of the past. As civilization becomes increasingly complex and as advancements are made, the police power must of necessity evolve, develop and expand, in the public interest, to meet such conditions.

*See also Security National Bank & Trust Co. v. First W.Va. Bancorp., Inc.*, 166 W.Va. 775, 780, 277 S.E.2d 613, 616 (1981).

■ Our research has revealed that courts throughout the country have recognized that the constitutional right to keep and bear arms is not absolute, and these courts have uniformly upheld the police power of the state through its legislature to impose reasonable regulatory control over the state constitutional right to bear arms in order to promote the safety and welfare of its citizens. *See, e.g., Bristow v. State*, 418 So.2d 927, 930 (Ala.Crim.App.), *cert. denied* (Ala.1982); *People v. Blue*, 190 Colo. 95, 102–03, 544 P.2d 385, 390–91 (1975); *State v. Rupp*, 282 N.W.2d 125, 130 (Iowa 1979); *In re Atkinson*, 291 N.W.2d 396, 399 (Minn.1980); *State v. Angelo*, 3 N.J.Misc. 1014, 1015, 130 A. 458, 459 (1925); *State v. Dees*, 100 N.M. 252, 254–55, 669 P.2d 261, 263–64 (Ct.App.1983); *Commonwealth v. Ray*, 218 Pa.Super. 72, 79, 272 A.2d 275, 279 (1970); *Carfield v. State*, 649 P.2d 865, 871 (Wyo.1982). We stress, however, that the legitimate governmental purpose in regulating the right to bear arms cannot be pursued by means that broadly stifle the exercise of this right where the governmental purpose can be more narrowly achieved. *City of Lakewood, supra.*

At least forty-two jurisdictions have constitutional provisions guaranteeing a right to bear arms; however, most are distinguishable from art. III, § 22 either in their failure to specifically recognize the right to self-defense, or in their express recognition that the constitutional provision is subject to legislative regulation. *See* R. Dowlut & J. Knoop, *State Constitutions and the Right to Keep and Bear Arms*, 7 Okla. City U.L.Rev. 177, 236–240 (1982). The State, in the appendix to its brief, cites thirteen states which, like art. III, § 22, grant a rather broad, unrestrictive right to bear arms for the defense of self and the state.[8] With the exception of Vermont,

---

**8.** The following is a list of the jurisdictions with constitutional provisions, quoted below, guaranteeing a right to bear arms, which are worded similarly to West Virginia's amendment. Of particular note is the Delaware constitutional provision which is nearly identical to West Virginia's constitutional guarantee, except for the insertion of the word "lawful" before the word "hunting" in the West Virginia amendment.

which imposes no significant regulation, the remaining jurisdictions regulate the ownership and use of arms in general, particularly handguns.[9]

Again excluding Vermont, certain statutory regulations are common to most of the jurisdictions having constitutional provisions comparable to West Virginia's. For instance, the prohibition against the possession or ownership of handguns by persons previously convicted of a felony or other specified crime is widely accepted.[10] Four states prohibit the open or concealed carry-

ing of handguns without a license or permit; several others specifically prohibit carrying a concealed handgun without a license, while at least one of these jurisdictions, namely, Arizona, further prohibits carrying a handgun in public establishments or certain specified public places.[11]

West Virginia does not regulate the carrying of a weapon on one's own premises nor prohibit the carrying of such weapon to and from places where they may be lawfully used, i.e., target-shooting clubs

*Alabama:* "That every citizen has a right to bear arms in defense of himself and the state." *Ala. Const.* art. I, § 26.

*Arizona:* "The right of the individual citizen to bear arms in defense of himself or the State shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain, or employ an armed body of men." *Ariz. Const.* art. II, § 26.

*Connecticut:* "Every citizen has a right to bear arms in defense of himself and the state." *Conn. Const.* art. I, § 15.

*Delaware:* "A person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use." *Del. Const.* art. I, § 20.

*Indiana:* "The people shall have a right to bear arms, for the defense of themselves and the State." *Ind. Const.* art. I, § 32.

*Michigan:* "Every person has a right to keep and bear arms for the defense of himself and the state." *Mich. Const.* art. I, § 6.

*New Hampshire:* "All persons have the right to keep and bear arms in defense of themselves, their families, their property and the state." *N.H. Const.* pt. 1, art. 2-a.

*Oregon:* "The people shall have the right to bear arms for the defence [sic] of themselves, and the State, but the Military shall be kept in strict subordination to the civil power[.]" *Or. Const.* art. I, § 27.

*Pennsylvania:* "The right of the citizens to bear arms in defence [sic] of themselves and the State shall not be questioned." *Pa. Const.* art. I, § 21.

*South Dakota:* "The right of the citizens to bear arms in defense of themselves and the state shall not be denied." *S.D. Const.* art. VI, § 24.

*Utah:* "The individual right of the people to keep and bear arms for security and defense of self, family, others, property, or the state, as well as for other lawful purposes shall not be infringed; nothing herein shall prevent the legislature from defining the lawful use of arms." *Utah Const.* art. I, § 6.

*Vermont:* "That the people have a right to bear arms for the defence [sic] of themselves and the State—and as standing armies in time of peace are dangerous to liberty, they ought

not to be kept up; and that the military should be kept under strict subordination to and governed by the civil power." *Vt. Const.* ch. 1, art. 16.

*Washington:* "The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men." *Wash. Const.* art. I, § 24.

*Wyoming:* "The right of citizens to bear arms in defense of themselves and of the state shall not be denied." *Wyo. Const.* art. I, § 24.

9. Although Vermont imposes no significant restriction on the carrying of handguns, it nevertheless has regulations prohibiting the possession or carrying of handguns and other deadly weapons with intent to injure another person. *Vt.Stat.Ann.* tit. 13, § 4003 (1974).

10. *Ala.Code* § 13A–11–72 (1982); *Conn.Gen.Stat. Ann.* § 29–29 (West 1975); *Ind.Code Ann.* § 35–47–2–3 (Burns 1985); *Mich.Comp.Laws Ann.* § 28.422 (West Supp.1988); *N.H.Rev.Stat.Ann.* § 159:3 (1981); *Or.Rev.Stat.* § 166.270 (1987); *Pa.Stat.Ann.* tit. 18, § 6105 (Purdon 1983); *S.D. Codified Laws Ann.* § 23–7–7.1 (Supp.1987); *Utah Code Ann.* § 76–10–513 (Supp.1987); *Wash.Rev.Code Ann.* § 9.41.040 (West 1988); *Wyo.Stat.* § 6–8–104 (1977, 1986).

11. *See, e.g., Ala.Code* § 13A–11–52, 13A–11–73 (1982); *Ariz.Rev.Stat.Ann.* § 13–3102 (Supp. 1987); *Conn.Gen.Stat.Ann.* § 29–35 (West Supp. 1988); *Ind.Code Ann.* § 35–47–2–1 (Burns Supp. 1988); *Mich.Comp.Laws Ann.* §§ 28.422, 750.-227 (West Supp.1988); *N.H.Rev.Stat.Ann.* § 159:4 (1977); *Or.Rev.Stat.* § 166.250 (1987); *Pa.Stat.Ann.* tit. 18, § 6106 (Purdon 1983 and Supp.1988); *S.D. Codified Laws Ann.* § 22–14–9 (Supp.1987); *Utah Code Ann.* § 76–10–513 (Supp.1987); *Wash.Rev.Code Ann.* § 9.41.050 (1988); *Wyo.Stat.* § 6–8–104 (1977, 1986).

Alabama, Connecticut, Indiana and Michigan are the four jurisdictions which prohibit the unconcealed (or open) or concealed carrying of handguns without a license or permit.

and hunting grounds. *W.Va.Code,* 61–7–3 [1987].[12] Pursuant to *W.Va.Code,* 61–7–2 [1988], any person desiring to obtain a license to carry a weapon must meet the following requirements: (1) is a citizen of the United States; (2) has been a resident of West Virginia for at least one year next prior to the date of application; (3) is an adult of good moral character and temperate habits; (4) has not been convicted of any felony or handgun offense; (5) has been employed for five years; (6) is qualified to handle handguns; (7) has "good reason and cause" to carry such weapon, and (8) must post a $5000 surety bond.

The regulatory requirements, embodied in *W.Va.Code,* 61–7–2 [1988], rather than being unique, are for the most part found in the fourteen states with similar constitutional provisions.[13] Of the three states whose constitutional provisions most closely resemble our own, Connecticut, Indiana, and Michigan, two require the licenses to be a United States citizen and resident of the state;[14] all three require that the licensee be of good character or a "suitable person;"[15] two require that the licensee be an adult;[16] all three prohibit possession by persons convicted of a felony;[17] two require that the licensee demonstrate good cause or proper reason to carry a weapon;[18] and one requires that a licensee not be addicted to drugs or alcohol.[19]

It is important to note that the state of Delaware recently adopted a constitutional amendment strikingly similar to our West Virginia provision, *see Del. Const.* art. I, § 20, quoted in note 8, *supra.* The Delaware weapons statute, *Del.Code Ann.* tit. 11, § 1441 (1987) is analogous to our weapons regulations in that it requires an applicant to obtain a license in order to carry a concealed weapon. Similar to *W.Va.Code,* 61–7–2 [1988], the statute further provides that an applicant be of "full age, sobriety and good moral character" as well as demonstrate that the carrying of such a weapon is necessary for the protection of the applicant himself, his property or both in order to be so licensed.

 Based upon the foregoing, we conclude that the right to keep and bear arms

---

**12.** *W.Va.Code,* 61–7–3 [1987] provides in pertinent part:

Nothing in this article shall prevent any person from carrying any such weapon as is mentioned in the first section of this article, in good faith and not having felonious purposes, upon his own premises; nor shall anything herein prevent a person from carrying any such weapon, unloaded, from the place of purchase to his home or residence, or to a place of repair and back to his home or residence; ... nor shall anything herein prevent any member of a properly organized target-shooting club authorized by law to obtain firearms by purchase or requisition from this state, or from the United States for the purpose of target practice, from carrying any revolver or pistol mentioned in this article, unloaded, from his home or place of residence to a place of target practice, and from any such place of target practice back to his home or residence, for using any such weapon at such place of target practice in training and improving his skill in the use of such weapons[.]

**13.** *See, e.g., Ala.Code* §§ 13A–11–72 to –75, as amended; *Conn.Gen.Stat.Ann.* §§ 29–28,–29,–33, as amended; *Ind.Code Ann.* §§ 35–47–2–3, 35–47–1–7, as amended; *Mich.Comp.Laws Ann.* §§ 28.422,–.426, as amended; *N.H.Rev.Stat.Ann.* §§ 159:3,–:6, as amended, *Or.Rev.Stat.* §§ 166.–270,–290, as amended; *Pa.Stat.Ann.* tit. 18,

§§ 6105, 6109, as amended; *S.D. Codified Laws Ann.* § 23–7–7.1 (Supp.1987); *Utah Code Ann.* § 76–10–513 (Supp.1987); *Wash.Rev.Code Ann.* § 9.41.070 (1988); *Wyo.Stat.* § 6–8–104 (1977, 1986).

**14.** *See Conn.Gen.Stat.Ann.* §§ 29–33 and –28, as amended, respectively, and *Mich.Comp.Laws Ann.* § 28.422 (West Supp.1988).

**15.** *Conn.Gen.Stat.Ann.* § 29–28 (West 1975); *Ind.Code Ann.* § 35–47–2–3 (Burns 1985); *Mich. Comp.Laws Ann.* § 28.426 (West Supp.1988).

**16.** *Ind.Code Ann.* § 35–47–2–3 (Burns 1985); *Mich.Comp.Laws Ann.* § 28.422 (West Supp. 1988).

**17.** *See* note 10, *supra.*

**18.** *Ind.Code Ann.* § 35–47–2–3 (Burns 1985); *Mich.Comp.Laws Ann.* § 28.426 (West Supp. 1988).

**19.** *Ind.Code Ann.* § 35–47–1–7 (Burns 1985).

We further note that Utah, like West Virginia, requires applicants for a weapon license to have an employment history. *Utah Code Ann.* § 76–10–513 (Supp.1987).

Thus, our research reveals that the only requirement unique to West Virginia is that the licensee post a $5000 surety bond.

guaranteed by *W. Va. Const.* art. III, § 22 is not unlimited. The individual's right to keep and bear arms and the State's duty, under it police power, to make reasonable regulations for the purpose of protecting the health, safety and welfare of its citizens must be balanced. *See People v. Blue*, 190 Colo. 95, 102–03, 544 P.2d 385, 390–91 (1975). Accordingly, the West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State, provided that the restrictions or regulations imposed do not frustrate the constitutional freedoms guaranteed by article III, section 22 of the *West Virginia Constitution,* known as the "Right to Keep and Bear Arms Amendment." However, a governmental purpose to control or prohibit certain activities, which may be constitutionally subject to state regulation under the police power, may not be achieved by means which sweep unnecessarily broadly and thereby invade the realm of protected freedoms, such as the right to keep and bear arms guaranteed in our State *Constitution. See City of Lakewood v. Pillow,* 180 Colo. 20, 23, 501 P.2d 744, 745 (1972).

For the foregoing reasons, we answer the first certified question in the negative and the second in the affirmative and remand this action to the Circuit Court of Mercer County for further proceedings consistent with this opinion.

Having answered the certified questions, this case is dismissed from the docket of this Court.

Certified questions answered.