391 S.E.2d 635

In re Application of Wesley W.
METHENEY for State License
to Carry a Deadly Weapon.

In re Application of James S. GOOTS
for State License to Carry a
Deadly Weapon.

In re Application of Thomas S. CUETO
for State License to Carry a
Deadly Weapon.

In re Application of Charles Douglas
RINKER for State License to
Carry a Deadly Weapon.

Nos. 19531–19533 and 19542.

Supreme Court of West Virginia.

March 26, 1990.

Clark Frame, J. Michael Benninger, Wilson, Frame & Metheney, Morgantown, for Wesley W. Metheney.

James S. Goots, Paden City, pro se.

Thomas S. Cueto, Morgantown, pro se.

J. David Judy, III, William H. Judy, III, Moorefield, for Charles Douglas Rinker.

BROTHERTON, Justice:

This case involves four separate appeals brought by individual citizens seeking to obtain a license to carry a *concealed* deadly weapon pursuant to W.Va.Code § 61–7–4 (1989). The applicants contend that they meet the requirements promulgated in W.Va.Code § 61–7–4 to obtain a license to carry a concealed deadly weapon. In each case, a hearing was held by the respective circuit court judge, at which time the applicant expressed his desire for the license and explained why a concealed weapon was necessary.[1] Although it appeared from their applications that each applicant had fulfilled the requirements of W.Va.Code § 61–7–4(a), the circuit court judge denied their petitions, in essence finding no valid reason to necessitate the carrying of a concealed deadly weapon. This proceeding comprises the applicants' appeals from the circuit courts' rulings.[2]

West Virginia Code § 61–7–4 (1989) provides, in part, that:

(a) Any person desiring to obtain a state license to carry a concealed deadly weapon shall apply to the circuit court of his or her county for such license, and shall pay to the clerk of the circuit court, at the time of application, a filing fee of twenty dollars. The applicant shall file with the clerk of the circuit court an application in writing, duly verified, which sets forth the following:

(1) That the applicant is a citizen of the United States of America or lawfully resides in the United States of America;

(2) That, on the date the application is made, the applicant is a bona fide resident of this state and of the county in which the application is made;

(3) That the applicant is eighteen years of age or older;

(4) That the applicant is not addicted to alcohol, a controlled substance or a drug, and is not an unlawful user thereof;

(5) That the applicant has not been convicted of a felony or of an act of violence involving the misuse of such deadly weapon;

(6) That the applicant desires to carry such deadly weapon for the defense of self, family, home or state, or other lawful purpose;

(7) That the applicant is physically and mentally competent to carry such weapon;

(8) That, in the case of a person applying for a license to carry a concealed

---

1. Mr. Metheney contends he needs a concealed weapon in order to take deposits to the bank, when traveling to his rural vacation home with children in the car, and because of break-ins at his office.

   Mr. Cueto argues that he should be allowed to carry a concealed weapon because, as a medically-retired State trooper, he is subject to threats that could cripple or kill him.

   Mr. Rinker explains that he is the owner of a construction company with rural construction jobs and might confront thieves on site.

   Finally, Mr. Goots objects to a limited license to carry a concealed weapon when he transports large sums of money from his business or gun shows.

2. The four petitions for appeal have been consolidated for purposes of this opinion.

pistol or revolver, the applicant has qualified under minimum requirements for handling and firing such firearms. These minimum requirements are those promulgated by the department of natural resources. . . .

\* \* \* \* \* \*

(b) The court shall issue or deny such license within thirty days after the application is filed with the circuit clerk. The court shall, if necessary, hear evidence upon all matters stated in such application and upon any other matter related to the eligibility of the applicant under subsection (a) of this section. If from such application or the proof it appears that the purpose for such person to carry such weapon is defense of self, family, home or state, or other lawful purpose, and all other conditions in subsection (a) are complied with, the court, or the judge thereof in vacation, shall grant such license.

(c) In the event an application is denied, the specific reasons for the denial shall be stated in the order of the court denying the application. Upon denial of an application and at the request of the applicant made within ten days of such denial, the court shall schedule the matter for a hearing. The applicant may be represented by counsel, but in no case shall the court be required to appoint counsel for an applicant. The final order of the court shall include the court's findings of fact and conclusions of law.

The appellants contend that W.Va.Code § 61-7-4 does not permit the circuit court any discretion in the granting of the licenses outside the specific provisions of the statute. They further claim a constitutional right to carry a concealed deadly weapon. For the reasons stated below, we disagree.

■ While we agree that Article III, Section 22 of the West Virginia Constitution gives a citizen a constitutional right to carry a weapon, the appellants' contention that this Court's opinion in *State ex rel. City of Princeton v. Buckner*, 180 W.Va.

457, 377 S.E.2d 139 (1988), creates a constitutional right to carry a concealed deadly weapon is without merit. Although the facts in *Buckner* involved a concealed weapon, the case came before the Court on the limited issues identified in the two certified questions. Specifically, the Court was asked to determine whether that provision of Chapter 61 of the West Virginia Code which related to the carrying of certain deadly weapons without a license was constitutional in light of the Right to Keep and Bear Arms amendment to the West Virginia Constitution and whether the State legislature could regulate that right through proper legislation. After determining that W.Va.Code § 61-7-1 (1975) was overbroad and infringed on the constitutional right, the Court then ruled that the State legislature, through the proper exercise of its valid police power, could reasonably regulate the right to keep and bear arms in order to promote the health and safety of the citizens of this State. *Id.* at syl. pts. 3 and 4.

■ Whenever an act of the legislature can be applied so as to avoid conflict with a constitutional provision, that construction should be adopted. *Underwood Typewriter Co. v. Piggott*, 60 W.Va. 532, 55 S.E. 664 (1906). Moreover, it is a well established rule of statutory construction that where the language of the statute is clear and without ambiguity, the plain meaning should be accepted without resorting to rules of interpretation. *State ex rel. Underwood v. Silverstein*, 167 W.Va. 121, 278 S.E.2d 886 (1981); *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207 S.E.2d 897 (1974).[3] Conversely, however, statutory construction is necessary where a statute contains ambiguity and the legislative intent is unclear.

Our review of W.Va.Code § 61-7-4 (1989) reveals that ambiguity exists in subsection (b):

(b) The court shall issue or deny such license within thirty days after the application is filed with the circuit clerk. The

---

**3.** The legislature is presumed to intend that every word used in a statute has a specific purpose and meaning. *State ex rel. Johnson v. Robinson,* 162 W.Va. 579, 251 S.E.2d 505, 508 (1979).

court shall, if necessary, hear evidence upon all matters stated in such application and upon any other matter related to the eligibility of the applicant under subsection (a) of this section. *If from such application or the proof it appears that the purpose for such person to carry such weapon is defense of self, family, home or state, or other lawful purpose,* and all other conditions in subsection (a) are complied with, *the court, or the judge thereof in vacation, shall grant such license.* (Emphasis added.)

Consequently, W.Va.Code § 61–7–4(b) is subject to statutory interpretation.

■ When read together with the amendment to Article III, § 22, which gives a citizen the constitutional right to keep and bear arms, we believe the legislative intent was to allow only those citizens who qualify under W.Va.Code § 61–7–4, to obtain a license to carry a concealed weapon. The statute permits a hearing to be held, if necessary. If the judge determines that the eight specific requirements found in subsection (a) have been satisfied, then the circuit court must issue the license. However, under W.Va.Code § 61–7–4(b) (1989), the circuit court also has the power to examine the assertions made by the applicants to determine if the reasons are valid. Thus, if the court determines the statute has not been satisfied, the license will be denied and an order listing the court's findings of fact shall be issued.

If the court is allowed no discretion, we can find no reason for the legislature to permit the circuit court to take evidence on the "application or the proof" to see if the purpose of the application was for the "defense of self, family, home or state, or other lawful purpose." If the circuit court was required to accept the bald assertions of the applicant, as the appellants contend, we fail to see why a hearing is allowed and the judge permitted to grant or deny the license based upon that proof.[4] Surely nothing more than an administrative registrar would be necessary if the circuit court judge had no discretion to look behind the application.

■ We believe the discretion allowed the circuit courts of this State to examine the assertions made by applicants for a license to carry a concealed deadly weapon is nothing more than the valid exercise of the State's police power defined in *Buckner.* West Virginia Code § 61–7–4 in no way infringes upon a citizen's right to keep and bear arms. It merely regulates the manner in which a citizen may do so, given the inherently dangerous nature of a concealed deadly weapon.[5]

Accordingly, we remand these appeals to the respective circuit courts for proceedings consistent with this opinion.

Remanded.

---

**4.** Also implicit in the statute is the discretion of the circuit court judge to order an investigation of the applicant's criminal record and/or psychiatric history, if any. Without that power, there would be no way for the court to ensure that the applicant's assertions were correct and the requirements met.

**5.** The legislature has also chosen to regulate the possession of deadly weapons in certain circumstances. West Virginia Code §§ 61–7–7 & 8 (1989) specifically prohibit particular categories of persons from possessing any deadly weapons. West Virginia Code § 61–7–9 prohibits the possession of any fully automatic weapon without first complying with applicable federal statutes and regulations. Finally, W.Va.Code § 61–7–11 makes it unlawful for any person, whether licensed or not, to carry, brandish, or use a deadly weapon in a manner to threaten or cause a breach of the peace.