UNITED STATES of America, Plaintiff,

v.

Roy Lee STUMP, Defendant.

Crim. No. 91–146.

United States District Court,
N.D. West Virginia.

Feb. 14, 1992.

---

William A. Kolibash, Wheeling, W.Va., for plaintiff.

George Fordham, Clarksburg, W.Va., for defendant.

## ORDER

MAXWELL, Chief Judge.

Pending before the Court is Defendant's motion to dismiss the six-count Indictment returned by the grand jury on December 5, 1991. Each count charges a separate violation of 18 U.S.C. § 922(g), which prohibits, *inter alia*, a convicted felon from knowingly possessing a firearm.[1] On January 31, 1992, the Court received evidence relevant to the motion and heard the argument of counsel. At the conclusion of the hearing, the Court took the motion under advisement and continued the trial which had been scheduled for February 3, 1992.

In his motion to dismiss, the Defendant urges that his civil rights were restored in 1984, without restriction on the possession of firearms, and that, therefore, the predicate conviction alleged in the Indictment cannot be used for this § 922(g) prosecution.

The United States acknowledges that the Defendant received a certificate from the State of West Virginia restoring his civil rights but disagrees that the certificate bars prosecution. The United States relies upon *United States v. Richard A. Haynes*, 785 F.Supp. 574 (S.D.W.Va.1991), which matter is currently on appeal to the United States Court of Appeals for the Fourth Circuit.[2] In *Haynes*, the district court concluded that the defendant was not permitted to possess a firearm under West Virginia law, despite the intervening restoration of civil rights, and that prosecution under § 922(g) was not barred. The procedural circumstances in *Haynes* are strikingly similar to those herein.

In the instant matter, it is represented that the Defendant was convicted of second degree murder in Calhoun County, West Virginia, in 1975. In March 1984, the Defendant was discharged from parole and any and all civil rights heretofore forfeited were restored.[3] At that time, West Virginia law did not restrict felons from possessing a firearm.[4]

In 1986, Congress enacted the Firearm Owners' Protection Act (FOPA), which substantially amended the federal firearms statutes effective November 15, 1986.

On November 4, 1986, West Virginia voters ratified the Right to Keep and Bear

---

1. The Defendant's memorandum in support notes that all six counts stem from the same incident, that is, six firearms were found in the Defendant's home on November 26, 1991.

2. The United States correctly points out that a decision rendered by the Fourth Circuit in the *Haynes* case would be binding precedent in this District; however, it is represented that oral argument has not yet been scheduled in that matter, which means that a written decision from the Fourth Circuit will not be forthcoming in the immediate future. Given the requirement in the Speedy Trial Act for the prompt disposition of pre-trial motions, it is believed that the instant motion must be addressed im-

mediately, and unfortunately, without the guidance of the Fourth Circuit. *See*, 18 U.S.C. § 3161(h)(1)(F).

3. The Defendant received a certificate of discharge dated March 27, 1984, signed by the deputy commissioner of the West Virginia Department of Corrections. The certificate contains no provision restricting the possession of firearms.

4. The federal statute in effect in 1984 prohibited firearm possession by a felon unless he or she had specific authorization to possess firearms. 18 U.S.C.App. §§ 1201–1203 (repealed).

Arms Amendment. Art. III, Section 22, W.Va. Const.[5]

Effective July 7, 1989, the West Virginia legislature enacted *West Virginia Code* § 61–7–7, making it a misdemeanor for a convicted felon to possess a firearm.[6]

The Indictment charges that the Defendant possessed six firearms on November 26, 1991. The issue before the Court is whether the Defendant was prohibited under West Virginia law from possessing those weapons on November 26, 1991.

Under 18 U.S.C. § 922(g)(1), it is a federal crime for a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm...." However, § 921(a)(20), as amended in 1986, defines the term "crime punishable by imprisonment for a term exceeding one year" as follows:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

■ In the instant case, the certificate of discharge, which purports to restore the Defendant's civil rights, does not expressly provide that this Defendant may not ship, possess, or receive firearms. However, in the Fourth Circuit, courts must look to the whole of state law rather than only to the certificate itself to determine whether the state intended, notwithstanding a general restoration of civil rights, to prohibit a particular ex-convict's possession of firearms. *United States v. McLean,* 904 F.2d 216 (4th Cir.1990); *United States v. McBryde,* 938 F.2d 533 (4th Cir.1991).[7]

Upon an examination of West Virginia law, as it existed from 1984 to the present, the Court believes that federal prosecution pursuant to § 922(g)(1) is barred in this instance because the state conviction upon which federal prosecution depends has been voided as a conviction by the provisions of 18 U.S.C. § 921(a)(20).

The Government argues that in 1984 when the Defendant received his certificate of discharge he was not authorized to possess a firearm under federal law unless he had received a pardon and, for this reason, West Virginia had no reason to enact legislation to restrict firearm possession at that time. This, apparently, was the state of both West Virginia and federal law in March 1984 when the Defendant's civil rights were restored. Nevertheless, section 921(a)(20) requires the Court to focus only upon State law to determine whether civil rights were restored and whether the restoration restricted the possession of firearms. There is little doubt that Defendant's civil rights were unconditionally restored in March 1984.

Thus, it is clear that a person whose civil rights have been restored will automatically be exempted from prosecution under § 922(g)(1) for possession of a firearm "un-

5. "A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

6. The Government suggests that the West Virginia legislature acted in response to the 1986 amendment of the federal firearms statute, in particular, § 921(a)(20). However, the dates upon which each piece of legislation was enacted does not support this theory. Moreover, *West Virginia Code* § 61–7–1 expressly provides that it was the ratification of the Right to Keep and Bear Arms Amendment which prompted the 1989 legislation.

7. In these cases, the Fourth Circuit proceeded to examine North Carolina law. It should be noted that the Seventh Circuit expressed disagreement with this "whole of state law" analysis, finding in *U.S. v. Erwin,* 902 F.2d 510, 512–513 (7th Cir.1990), that the express language of § 921(a)(20) compels courts to look to the certificate restoring civil rights and that "a state must tell the felon point blank that weapons are not kosher." Although the statutory language appears to support the position of the Seventh Circuit, the Fourth Circuit has determined that congressional intent supports the "whole of state law" analysis.

less the state *affirmatively* restricts the former felon from such activities." *McLean*, 904 F.2d at 217 (emphasis added). At the time the Defendant's civil rights were restored, West Virginia law placed no restriction on his right to possess a firearm and the West Virginia Department of Corrections took no affirmative action to restrict him from such activities.[8]

The question now becomes whether West Virginia's legislative action in 1989 (some 5 and ½ years after the Defendant's civil rights were restored) can resurrect his conviction for purposes of the instant § 922(g) prosecution.

The Defendant argues that retroactive application of this statute violates ex post facto limitations. In reaching this question, the Court looks to Article I of the United States Constitution which provides that neither Congress nor any State shall pass any "ex post facto Law." *See*, Art I, § 9, cl. 3; Art. I, § 10, cl. 1. In *Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987), the United States Supreme Court reaffirmed that present understanding of what is meant by "ex post facto" derives from the case of *Calder v. Bull*, 3 Dall 386, 1 L.Ed. 648 (1798) and was explained by Justice Chase as follows:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

Justice Chase further explained that ex post fact clauses were included in the Constitution "to assure that federal and state legislatures refrained from enacting arbitrary or vindictive legislation." *Calder*, 3 Dall at 386, 1 L.Ed. at 648. It is now well established that the ex post facto clauses were also aimed at a second concern, namely, that legislative enactments "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–64, 67 L.Ed.2d 17 (1981).

Upon careful consideration of these principles, the Court does not believe that the application of the 1989 state firearms legislation to an act committed by the Defendant on November 26, 1991, falls within the ex post facto prohibition. In the instant case, the Court is confronted with a slightly different problem, in that, the act for which the Defendant is now charged occurred subsequent to the enactment of the state law, but is preceded by state action upon which the Defendant has perhaps relied to his detriment. In this regard, the Court does perceive serious problems affecting fundamental fairness in light of the questionable vitality of the 1975 state conviction as applied to the 1989 state firearms legislation and, in turn, to the 1986 federal firearms legislation.

In addressing this problem, the Court first recognizes that the Defendant's civil rights were unconditionally restored in 1984 and that there was no state restriction prohibiting his possession of a firearm. Thereafter, the Defendant received certain state constitutional guarantees with the ratification of the 1986 Right to Keep and Bear Arms Amendment to the West Virginia Constitution.

---

8. The Government suggests that this creates a loophole which is not consistent with congressional intent in enacting FOPA. The Court disagrees. It was the express intent of Congress to give effect to state reforms with respect to the status of an ex-convict. *U.S. v. Cassidy*, 899 F.2d 543, 549 (6th Cir.1990). Moreover, Congress clearly anticipated this so-called loophole. The legislative history suggests that Senator Durenberger urged delaying the effective date of FOPA in order to allow states to reexamine their civil rights restoration laws and state statutes regulating possession of firearms by convicted felons. He stated that, in states where civil rights are automatically restored, "under the new federal law, it will no longer be a violation ... for ... a[n] [individual] convicted of a felony to possess a firearm...." *See, Cassidy*, 899 F.2d at 548–549.

It must next be recognized that the 1989 state firearms legislation was prompted in 1988, when the West Virginia Supreme Court of Appeals declared certain state statutory proscriptions against *carrying* a dangerous or deadly weapon as overbroad and in violation of the right to keep and bear arms guaranteed by the West Virginia Constitution. *City of Princeton v. Buckner,* 180 W.Va. 457, 377 S.E.2d 139 (1988). The state court did, however, recognize that the state legislature may reasonably regulate the right of a person to keep and bear arms provided that such regulations do not frustrate constitutional freedoms guaranteed under the Right to Keep and Bear Arms Amendment. *Buckner,* 377 S.E.2d at 149.

With the guidance of the *Buckner* decision, the West Virginia legislature, in its 1989 legislative session, amended and reenacted the state code concerning dangerous weapons by substituting present §§ 61–7–1 to 61–7–14 for former §§ 61–7–1 to 61–7–15. The purpose for the amendment is stated at *West Virginia Code* § 61–7–1 (Supp.1991):

> The Legislature finds that the overwhelming support of the citizens of West Virginia for article three, section twenty-two of the Constitution of this State, commonly known as the "Right to Keep and Bear Arms Amendment", combined with the obligation of the state to reasonably regulate the right of persons to keep and bear arms for self-defense requires the reenactment of this article.

In regulating the right of persons to keep and bear arms, the West Virginia legislature determined that it shall be a misdemeanor for a person who has been convicted of a felony to possess a firearm unless he petitions a circuit court and receives permission to do so. *West Virginia Code* § 61–7–7 (Supp.1991).

The Court believes that it would be fundamentally unfair to base federal prosecution upon an amendment to the state code which, according to the Government's theory, attempts to revoke state privileges earlier restored.[9] Section 921(a)(20) cannot logically mean that federal prosecution is permitted where a state provides an individual discharged from parole with an unconditional restoration of rights and then five and one-half years later attempts to revoke a portion of those rights.

By virtue of its strict imprisonment requirements and the possibility of enhanced penalty provisions which call for mandatory minimum prison terms, a violation of § 922(g) is a serious federal crime with quite serious penalties. Under such circumstances, the Court is cautioned against the prosecution of an individual because of mistake, because of a misunderstanding of the state of the law, or because of mixed messages sent by the state government as to the status of one's right to possess firearms.[10]

Upon consideration of the whole of state law, the Court believes that the Defendant is exempted from prosecution under § 922(g) since the State of West Virginia did not affirmatively restrict him from possessing a firearm, by virtue of its certificate restoring civil rights nor by virtue of any other state law codified at the time of his discharge from parole. Accordingly, it is

ORDERED that the Defendant's motion to dismiss be, and the same hereby is, GRANTED, and the six-count Indictment returned by the grand jury on December 5, 1991, is DISMISSED.

---

**9.** *See, U.S. v. Traxel,* 914 F.2d 119 (8th Cir.1990). Although decided under § 924(e)(1) enhancement for three prior violent felony convictions, *Traxel,* nonetheless, addresses the situation where, as here, the restoration of civil rights is followed by the enactment of a state law restricting the possession of firearms.

**10.** During the hearing, an attorney for the West Virginia Department of Corrections testified that he believes that West Virginia is still sending the same restoration of rights certificate to an individual when he is discharged from parole. The Court believes that it would be a better policy to advise the individual of the restriction codified at *Code* § 61–7–7.