593 S.E.2d 839

**Thomas D. HAISLOP, Michael R. Reed, Thomas E. Johnson, II, Petitioners Below, Appellants,**

v.

**Gary EDGELL, Superintendent, WV Department of Public Safety; Ginny Conley, Wood County Prosecuting Attorney; and W.L. Rectenwald, Commander Wood County Detachment WV State Police, Respondents Below; Appellees.**

No. 31261.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2003.

Decided Dec. 5, 2003.

Concurring Opinion of Chief Justice Starcher Dec. 10, 2003.

Starcher, C.J., filed a concurring opinion.

**90**

William B. Richardson, Jr., Esq., Richardson, Richardson & Campbell, Parkersburg, for Appellants.

Ginny Conley, Prosecuting Attorney, Parkersburg, *Pro Se.*

Darrell V. McGraw, Jr., Attorney General, John A. Hoyer, Esq., Assistant Attorney General, Charleston, for Gary Edgell and West Virginia State Police, Appellees.

McGRAW, Justice.

Appellants challenge the state's active, public disclosure of personal information and the lifetime registration requirements applied to them under the West Virginia Sex Offender Registration Act, W. Va.Code § 15–12–1 *et seq.* They seek reversal of the lower court's order denying their request for injunctive relief. For the reasons stated, we affirm the order of the lower court.

## I.

## FACTS

Our analysis in this case is guided by the words of the U.S. Supreme Court in a recent decision. "Sex offenders are a serious threat in this Nation. The victims of sex assault are most often juveniles, and when convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sex assault." *Connecticut Department of Public Safety v. Doe,* 538 U.S. 1, 4, 123 S.Ct. 1160, 1163, 155 L.Ed.2d 98, 103 (2003) (Citations and internal quotations omitted).

Each appellant has been convicted of a "sexual offense," a term we shall discuss at greater length, *infra.* As a result of this conviction, the West Virginia Sex Offender Registration Act, W. Va.Code § 15–12–1 *et seq.* (the "Act"), requires that each register as a "sex offender" and provide certain information to the police, which the police in turn must make available to the public. Because of the particular details of each appellant's sexual crimes, the statute currently requires each of them to continue to register as a sex offender for the rest of his life.

Appellant Haislop was convicted in 1995 for two counts of third degree sexual abuse and three counts of third degree sexual assault. Appellant Reed was convicted in 1996 one count each of first degree sexual abuse and sexual abuse by a parent or custodian. Appellant Johnson was convicted in 1995 for first degree sexual abuse. The record indicates that each appellant had at least one minor victim. Appellants argue that each was convicted prior to the time that the Legislature amended the statute to require life registration of certain offenders or active disclosure by the state of their status as sex offenders through public meetings and internet publication.

The appellants all sought an injunction from the Circuit Court of Wood County to prohibit the lifetime public disclosure of the their names and personal information. They also argued that the court should allow them a hearing to demonstrate that they have rehabilitated themselves, and should then limit any public disclosure of information to that reasonably necessary in light of each individual's risk of re-offending. On January 2, 2002, the circuit court denied their request for injunctive relief and this appealed followed. For the reasons set forth below, we affirm the decision of the lower court.

## II.

## STANDARD OF REVIEW

■ It is clear that trial courts have great discretion when deciding to grant or deny an injunction:

" 'Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary [preliminary][1] or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.' Syl. pt. 11, *Stuart v. Lake Washington Realty*, 141 W.Va. 627, 92 S.E.2d 891 (1956)." Syl. Pt. 1, *G Corp, Inc. v. MackJo, Inc.*, 195 W.Va. 752, 466 S.E.2d 820 (1995).

Syl. pt. 1, *Baisden v. West Virginia Secondary Schools Activities Commission*, 211 W.Va. 725, 568 S.E.2d 32 (2002). Or stated another way:

The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.

Syl. pt. 4, *State ex rel., Donley v. Baker*, 112 W.Va. 263, 164 S.E. 154 (1932). *Accord, Jefferson Cty. Bd. of Educ. v. Jefferson County Educ. Ass'n*, 183 W.Va. 15, 393 S.E.2d 653 (1990); *State ex rel., East End Assoc. v. McCoy*, 198 W.Va. 458, 481 S.E.2d 764 (1996).

## III.

## DISCUSSION

The appellants make two basic arguments. First they argue that, because the Legislature amended the Act to require life registration and active disclosure of their status (by means of public meetings and internet publi-

cation) *after* the appellants committed their crimes, application of these new requirements to the appellants violates the *ex post facto* clause of the West Virginia Constitution. They also argue that these changes to the statute violate due process principles of the West Virginia Constitution. We shall discuss each argument in turn, but first we discuss the provisions in the Act that form the basis of this appeal.

### A. The Act

The Legislature first created the Sexual Offender Act in 1993. The current version of the Act reveals the purpose envisioned by the Legislature:

(a) It is the intent of this article to assist law-enforcement agencies' efforts to protect the public from sex offenders by requiring sex offenders to register with the state police detachment in the county where he or she shall reside and by making certain information about sex offenders available to the public as provided in this article. It is not the intent of the Legislature that the information be used to inflict retribution or additional punishment on any person convicted of any offense requiring registration under this article. This article is intended to be regulatory in nature and not penal.

(b) The Legislature finds and declares that there is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons.

(c) The Legislature also finds and declares that persons required to register as sex offenders pursuant to this article have a reduced expectation of privacy because of the state's interest in public safety.

W. Va.Code § 15–12–1a (2000).[2] As we noted in a recent case concerning the Act, it has

---

**1.** We add the word "preliminary" in order to avoid confusion. The Court's 1950's usage of the term "temporary" in *Stuart* is no longer technically correct. The Court recently explained that, "we now have three species of 'injunction' under our rules of civil procedure, the temporary re-

straining order, the preliminary injunction, and the permanent injunction." *Camden–Clark Memorial Hospital v. Turner*, 212 W.Va. 752, 575 S.E.2d 362, 368 (2002).

**2.** The Legislature added subsection (c) effective June 9, 2000. Because we find that the changes

evolved over the last several years, in conjunction with federal legislation:

> In 1993, when the Act was first enacted, it was contained in Chapter 61 of the West Virginia Code titled Crimes and Their Punishment.... In 1996, the federal law was amended to include implementation of the federal community notification statute by September 1997. West Virginia's Act was amended in 1996, 1997, and 1998. In 1999, the Act was once again amended and moved to Chapter 15, Public Safety. The 2000 amendments declared for the first time that sex offenders who are required to register "have a reduced expectation of privacy." W. Va.Code § 15–12–1a(c) (2000).

*Hensler v. Cross,* 210 W.Va. 530, 533, 558 S.E.2d 330, 333 (2001) (internal citation omitted).

The first federal offender law was the 1994 "Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act," codified at 42 U.S.C. § 14071 (2000). That law, named in honor of an 11–year–old Minnesota boy who was abducted and never found, required states to maintain a registry of persons convicted of certain sexual offenses, or face losing certain federal funds. See, *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

However, that federal law did not require the states to provide broad access to this information to the public. The 1996 change noted above was required by what has been called "Megan's Law," codified at 42 U.S.C. § 14071(e) (2000). This law, named for a 7–year–old New Jersey girl who was raped and murdered by a neighbor who was a twice-convicted sex offender, requires states to "release" information to the public about registered sex offenders, but leaves the states some discretion in the method of releasing information. *Smith v. Doe, supra.*

As this Court noted in *Hensler,* the West Virginia Act explains, by reference to other code sections, what constitutes a "sexual offense" and requires anyone convicted of certain crimes to register as a "sex offender."

> (b) Any person who has been convicted of an offense or an attempted offense or has been found not guilty by reason of mental illness, mental retardation or addiction of an offense under any of the following provisions of chapter sixty-one of this code or under a statutory provision of another state, the United States code or the uniform code of military justice which requires proof of the same essential elements shall register as set forth in subsection (d) of this section and according to the internal management rules promulgated by the superintendent under authority of section twenty-five, article two of this chapter:
>
> (1) Article eight-b, including the provisions of former section six of said article, relating to the offense of sexual assault of a spouse, which was repealed by an act of the Legislature during the year two thousand legislative session;
>
> (2) Article eight-c;
>
> (3) Sections five and six, article eight-d;
>
> (4) Section fourteen, article two; or
>
> (5) Sections six, seven, twelve and thirteen, article eight.
>
> (c) Any person who has been convicted of a criminal offense, and the sentencing judge made a written finding that the offense was sexually motivated shall also register as set forth in this article.

W. Va.Code § 15–12–2(b) and (c) (2001).[3] Depending on the type of crime committed, and certain other factors, an offender must remain on the registry for a period of ten years, or for life. Among other reasons, a person must register for life if he or she is found guilty of a sexual offense involving a minor—a common element in the convictions

in the statute do not violate the *ex post facto* clause, we refer to the latest version of each section of the statute in our discussion.

**3.** The related crimes are as follows: (2) filming of sexually explicit conduct of minors, (3) sexual abuse by parent guardian or custodian, or possession or distribution (by such a person) of

material showing the child (entrusted to such a person) engaged in a sexually explicit act, (4) kidnaping, and (5) prostitution and incest. Although the Legislature amended this section in 1999, 2000, and 2001, the crimes committed by the appellants have required registration since the Act's inception.

of all the appellants. The statute provides, in part, that one must register:

> (2) For the life of that person if that person: ... (E) has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a qualifying offense as referred to in this article, involving a minor.

W. Va.Code § 15–12–4 (2000).[4] The appellants do not contest that their convictions meet the criteria to require life registration under the current version of the statute. However, they do argue that the disclosure the state makes of the information they must provide to the registry violates their rights in various ways.

As noted above, the state now has a duty beyond the mere collection of sex offender information. The statute requires the state to disseminate to certain parties information on all registrants, whether they are 10–year registrants or life-long registrants.[5] However, the appellants specifically object to language in the statute that provides for community meetings and internet publication of a life registrant's information. That section reads, in part:

> (1) ... The prosecuting attorney and state police may conduct a community notification program in the county of residence, employment or where a person is attending school or a training facility of any person who is required to register for life under the terms of subdivision (2), subsection (a), section four of this article. Community notification may be repeated when determined to be appropriate by the prosecuting attorney; [6]
>
> (2) The county superintendent of schools where the registrant resides, is employed or attends school or a training facility;
>
> (3) The child protective services office charged with investigating allegations of child abuse or neglect in the county where the registrant resides, is employed or attends school or a training facility;
>
> (4) All community organizations or religious organizations which regularly provide services to youths in the county where the registrant resides, is employed or attends school or a training facility;
>
> (5) Individuals and organizations which provide day care services for youths or day care, residential or respite care, or other supportive services for mentally or physically incapacitated or infirm persons in the county where the registrant resides, is employed or attends school or a training facility; and
>
> (6) The federal bureau of investigation (FBI)....

4. The full text reads:

> (2) For the life of that person if that person: (A) Has one or more prior convictions or has previously been found not guilty by reason of mental illness, mental retardation or addiction for any qualifying offense referred to in this article; or (B) has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a qualifying offense as referred to in this article, and upon motion of the prosecuting attorney, the court finds by clear and convincing evidence, that the qualifying offense involved multiple victims or multiple violations of the qualifying offense; or (C) has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a sexually violent offense; or (D) has been determined pursuant to section two-a of this article to be a sexually violent predator; or (E) has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a qualifying offense as referred to in this article, involving a minor.
>
> W. Va. § 15–12–4 (2000).

5. W. Va.Code § 15–12–5 reads:

> Distribution and disclosure of information; community information programs by prosecuting attorney and state police; petition to circuit court
>
> (a) Within five working days after receiving any notification as described in this article, the state police shall distribute a copy of the notification statement to:
>
> (1) The supervisor of each county and municipal law-enforcement office and any campus police department in the city and county where the registrant resides, is employed or attends school or a training facility;

6. The full text of subsection (1) reads:

> (1) When a person has been determined to be a sexually violent predator under the terms of section two-a of this article, the state police shall notify the prosecuting attorney of the county in which the person resides, is employed or attends a school or training facility. The prosecuting attorney shall cooperate with the state police in conducting a community notification program which is to include publication of the offender's name, photograph, place of residence, employment and education or training, as well as information concerning the legal rights and obligations of both the offender and the community. Information relating to the victim of an offense requiring registration may not be released to the public except to the extent the prosecuting attorney

(2) The state police shall maintain and make available to the public at least quarterly the list of all persons who are required to register for life according to the terms of subdivision (2), subsection (a), section four of this article. No information concerning the identity of a victim of an offense requiring registration or information relating to internet accounts, screen names, user names or aliases a registrant has or uses may be released with this list. The method of publication and access to this list are to be determined by the superintendent;

W. Va.Code § 15–12–5 (2001). The superintendent has chosen the internet as at least one method of publication under this section.

### B. *Ex Post Facto* Clause

Appellants maintain that the changes made by the legislature regarding both life registration and active, public disclosure of information violate the *ex post facto* clause of the West Virginia Constitution. Appellants admit that this Court has previously determined in *Hensler* that the registration process itself does not constitute punishment and therefore does not violate the *ex post facto* clause; however, they argue that the additional burdens now associated with life-registration do amount to punishment. Specifically, they claim the change to life-long registration, and the changes in the way the state uses the information from registrants, *i.e.*, conducting community meetings and internet publication, constitute additional punishment and were not part of the law when they committed their crimes.

 In *Hensler*, the appellant argued that the application of the Act in his case violated the *ex post facto* clause because the offenses to which he plead *nolo contendre* had occurred prior to the creation of the Act. First, the Court examined the history of the

Act in an effort to determine whether the Act was civil, which would not implicate the *ex post facto* clause, or punitive, which would violate the clause. The Court held:

> The question whether an Act is civil or punitive in nature is initially one of statutory construction. A court will reject the Legislature's manifest intent only when a party challenging the Act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the Legislature's intention.

Syl. pt. 4, *Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 (2001). After examining cases from other jurisdictions and reviewing the regulatory purposes of the Act as enunciated by the Legislature, the Court held: "The Sex Offender Registration Act, W. Va. Code §§ 15–12–1 to 10, is a regulatory statute which does not violate the prohibition against *ex post facto* laws." *Id.* at syl. pt. 5.

Since this decision, the United States Supreme Court has held that a very similar sex offender registration act in Alaska was not punitive and did not violate the *ex post facto* clause of the U.S. Constitution. *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), concerned two offenders who were required to register for life under the Alaska Act, but challenged its application because they had been convicted before the passage of the act. Like the West Virginia Act, the Alaska Act requires lifetime registration of certain offenders, who must supply a variety of personal information and then must make periodic updates of this information. Like our law, the Alaska Act makes the majority of the recorded information public. Although the Alaska Act does not specify the means by which this information must be made public, the State of Alaska makes most of the non-confidential information available on the internet. *Smith v. Doe*,

---

and the state police consider it necessary to best educate the public as to the nature of sexual offenses: Provided, That no victim's name may be released in any public notification pursuant to this subsection. No information relating to internet accounts, screen names, user names or aliases a registrant has or uses may be released to the public with this notification program. The prosecuting attorney and state police may conduct a community

notification program in the county of residence, employment or where a person is attending school ·or a training facility of *any person who is required to register for life* under the terms of subdivision (2), subsection (a), section four of this article. Community notification may be repeated when determined to be appropriate by the prosecuting attorney.

W. Va.Code § 15–12–5(1) (2001) (emphasis added).

538 U.S. at 84–90, 123 S.Ct. at 1145–46, 155 L.Ed.2d at 175–76.

After a lengthy examination of the Alaska Act and its impact upon the constitutional rights of the offenders, the Court held:

> Our examination of the Act's effects leads to the determination that respondents cannot show, much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme. The Act is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause.

*Id.*, 538 U.S. at 105, 123 S.Ct. at 1154, 155 L.Ed.2d at 185 (2003).

In light of our decision in *Hensler*, and the U.S. Supreme Court's decision in *Smith*, and applying the logic of these decision to the allegations made in this case, we come to a similar conclusion. We believe the civil, nonpunitive nature of the Act has been well established. As the appellees point out, public records exist of each appellant's conviction for a sexual offense. These records are open to the public and could be examined by anyone, and probably were the subject of media reports at the time of the convictions. Some public record of the conviction will persist for the life of the appellants, even without the registry. The changes made to the statute that require life registration and public dissemination of registry information do not amount to an additional punishment that would violate the *ex post facto* clause.

■ In sum, we hold that the application of W. Va.Code § 15–12–4 (2000), which requires life registration for certain sexual offenders, or W. Va.Code § 15–12–5(a)(1) (2001), which allows for public dissemination of certain information about life registrants, to individuals who were convicted before the Legislature added these requirements to the Sexual Offender Registration Act does not violate the *ex post facto* clause of the West Virginia Constitution.

7. The lower court stated on page 9 of the transcript of the court's proceedings for January 2, 2002:

> This Court interprets the challenges made to the West Virginia Sex Offender Registration Act as being procedural due process challenges and not substantive due process challenges.

## C. Due Process

In their argument and briefs, appellants also aver that the broad, life-long public disclosure by the state of their information via community meetings and internet publication violates the due process clause of the West Virginia Constitution, on both procedural and substantive grounds.

■ At the outset, we note that appellees take the position that the appellants failed to raise a substantive due process argument before the lower court. Moreover, we note that the lower court made a specific finding on the record that the appellants were making procedural due process challenges and not substantive due process challenges.[7] This Court has explained that the trial court has great discretion in making such a finding:

> The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.

Syl. pt. 4, *State ex rel., Donley v. Baker*, 112 W.Va. 263, 164 S.E. 154 (1932). Furthermore, we have explained that we generally will not address a claim not asserted by one of the parties below:

> Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.

*Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont,*

This is based upon specific language in some of the pleadings, the absence of any language concerning a substantive due process challenge, and the fact that one aspect of the challenge is that there should be a hearing before the name is published, and that is traditionally a procedural due process issue.

126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943). Therefore, we do not address the application of substantive due process principles to appellants' claims.

As to procedural due process, appellants argue that the questioned provisions of the Act are unconstitutional because they subject offenders to publication without making a determination if a particular sex offender poses a current risk to the public. They also claim the provisions are unconstitutional because they fail to provide any mechanism by which a life registrant could demonstrate that he or she has been rehabilitated and is no longer dangerous to the public.

Appellees point out that the Act is silent as to any finding of "current dangerousness" and that the Act embraces an "offense based" rather than a risk based system (*i.e.*, as it currently reads, the inquiry made by the Act is "did he/she do it?" and not "how likely is he/she to do it again?"). The appellees also note that the appellants have all received adequate due process protection in the underlying trials that resulted in their convictions. Appellees make the point that the registration requirements, however onerous, are simply consequences that flow from the criminal acts committed by each appellant.

We find persuasive the holding of the U.S. Supreme Court in another recent case, released the same day as *Smith v. Doe, supra.* In *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), the Court reviewed a Second Circuit ruling that the Connecticut sex offender registration law deprived offenders of a liberty interest and violated due process because the law did not provide registrants with a pre-publication hearing to determine if they were "currently dangerous." As we noted earlier, the U.S. Supreme Court first stated that: "Sex offenders are a serious threat in this Nation. The victims of sex assault are most often juveniles, and when convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sex assault." *Id.* 538 U.S. at 4, 123 S.Ct. at 1163, 155 L.Ed.2d at 103 (citations and internal quotations omitted).

Mr. Doe had argued specifically that the law deprived him of a liberty interest, his reputation, and also altered his status under state law without notice or a meaningful opportunity to be heard. The Court did not engage in a lengthy due process analysis, but assumed, *arguendo*, that Doe had been deprived of a liberty interest, and then found that the fact Doe wished to establish, his "current dangerousness," was not material under the statute:

> Here, however, the fact that respondent seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's Megan's Law. As the DPS Website explains, the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest. 271 F.3d at 44 (" 'Individuals included within the registry are included *solely* by virtue of their conviction record and state law' " (emphasis added)). No other fact is relevant to the disclosure of registrants' information.

*Id.* 538 U.S. at 5, 123 S.Ct. at 1164, 155 L.Ed.2d at 105 (final citation omitted). The opinion goes on to note that Doe made no *substantive* due process argument—only a procedural one—in complaining that the act offered no chance at a hearing. "Unless respondent can show that that *substantive* rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise." *Id.* The Court concluded that the substantive due process issue was not properly before the Court, and expressed no opinion on whether or not the Connecticut law passed constitutional muster on this point.

We find ourselves in a similar posture in this case. The lower court has determined this to be only a procedural due process challenge. Nothing in the statute currently requires either a discretionary examination of an offender's dangerousness before requiring life registration, or a determination of the risk of re-offending before requiring publication of a registrant's information. Appellants attempt to draw us into a detailed examination of our due process jurisprudence, and asks us to consider the application of *Waite*

*v. Civil Service Commission,* 161 W.Va. 154, 241 S.E.2d 164 (1977), and related cases, to their claims; however, we, like the U.S. Supreme Court in the *Connecticut* case, do not find such a detailed discussion necessary to decide the issue at hand.

The Legislature has made changes in the statute in accordance with its powers and consistent with a rational public policy that seeks to provide citizens with information about convicted sexual offenders. This is an issue of great concern to all the citizens of this State. While one may argue that the Legislature could improve upon this statute, unless we find it to be violative of the constitution, we must accept it as it is.[8]

■ In light of the U.S. Supreme Court's decision in *Connecticut Department of Public Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), we are persuaded to hold that W. Va.Code § 15–12–4 (2000), which requires life registration for certain sexual offenders, and W. Va.Code § 15–12–5(1) (2001), which allows for public dissemination of certain information about life registrants, do not violate the procedural due process protections afforded by the West Virginia Constitution.

Having reached this conclusion, we note that our statute does provide additional review procedures for certain offenders.

Those accused of being "sexually violent predators" have the benefit of a hearing, both *before* such a designation can be made, and afterwards, if one so labeled asks to have the label removed due to rehabilitation. W. Va. Code § 15–12–2a (2000). The hearing is a summary proceeding before a judge, and is initiated by the request of the prosecuting attorney. Prior to a decision, the court may order a psychiatric examination of the offender, and can also order a period of observation in an appropriate mental health facility. *Id.*

Before making a final ruling, the judge must receive a report by the "sexually violent predator board" with findings and recommendation of the board as to whether the person is a sexually violent predator. The offender has the right to be present, to be represented by counsel, to introduce, evidence and to cross-examine witnesses. The offender also has the right to be examined by an independent expert of his or her choice. *Id.* At the conclusion of the hearing, the court shall make a finding of fact upon a preponderance of the evidence as to whether the person is a sexually violent predator. Perhaps most interesting in the context of this case, a person deemed a "sexually violent predator" may later request another hearing to challenge this designation, and if successful, may have this label removed.[9]

---

8. Moreover, none of the appellants presents a strong factual situation likely to support a finding that their substantive due process rights has been violated, were that issue properly before the Court. None has a conviction more than 10 years old, the length of the original registration requirement that was in effect at the time they were convicted. The record is silent as to any courses of treatment completed by the appellants, whether or not they have received counseling, or whether any mental health professional has offered an opinion as to their risk of re-offending. While not all the details of their underlying convictions are included in the record, it appears that all committed crimes at an age and of a nature that do not suggest an especially low likelihood of re-offense.

9. The code reads, in pertinent part:
 (b) A hearing to make a determination as provided for in subsection (a) of this section is a summary proceeding, triable before the court without a jury.
 (c) A proceeding seeking to establish that a person is a sexually violent predator is initiated by the filing of a written pleading by the prosecuting attorney. The pleading shall describe the record of the judgment of the court on the person's conviction or finding of not guilty by reason of mental illness, mental retardation or addiction of a sexually violent offense and shall set forth a short and plain statement of the prosecutor's claim that the person suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.
 (d) A proceeding seeking to establish that a person is no longer a sexually violent predator is initiated by the filing of a petition by the person who has been determined to be a sexually violent predator.
 (e) Prior to making a determination pursuant to the provisions of this section, the sentencing court may order a psychiatric or other clinical examination and, after examination, may further order a period of observation in an appropriate facility within this state designated by the court after consultation with the director of the division of health.

We also note that our recent case of *State v. Whalen,* 214 W.Va. 299, 588 S.E.2d 677 (2003), holds that those who have committed a crime not listed in the Act, but later deemed by a judge to be sexual in nature, also have the protection of a hearing on the issue, and an explicit evidentiary burden that the state must carry, before such a determination can be made:

> In order for a sentencing judge to make a finding pursuant to W. Va.Code § 15–12–2(c) (2001) that a defendant who has been convicted of a criminal offense—after a trial or by means of a plea of guilty or *nolo contendere*—was "sexually motivated" in the commission of that offense, the defendant must have been advised prior to trial or the entry of a plea of the possibility of such a finding.

> The evidentiary standard for a finding of "sexual motivation" pursuant to W. Va. Code § 15–12–2(c) (20001) is proof beyond a reasonable doubt, and a defendant must be given the opportunity to oppose and contest such a proposed finding with evidence and argument.

Syl. pts. 1 and 2, *State v. Whalen,* 214 W.Va. 299, 588 S.E.2d 677 (2003).

Additionally, we are not unmindful that the concurring opinion of Justices Souter and Ginsburg in *Connecticut Department of Public Safety* noted that they "agree with the observation that today's holding does not foreclose a claim that Connecticut's dissemination of registry information is actionable on a substantive due process principle[,]" *Id.* 538 U.S. at 8, 123 S.Ct. at 1165, 155 L.Ed.2d at 106, and that "the Court's rejection of respondents' procedural due process claim does not immunize publication schemes like Connecticut's from an equal protection challenge." *Id.* 538 U.S. at 10, 123 S.Ct. at 1166, 155 L.Ed.2d at 107.

Moreover, we also note that the U.S. Supreme Court wrestled with the offenders' life-long loss of an opportunity to show rehabilitation. With respect to the Alaska Sex Offender Act, Justice Ginsburg, joined by Justice Breyer, noted in her dissent in *Smith v. Doe,*

> And meriting heaviest weight in my judgment, the Act makes no provision whatever for the possibility of rehabilitation: Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation or conclusive proof of physical incapacitation. However plain it may be that a former sex offender currently poses no threat of recidivism, he will remain subject to long-term monitoring and inescapable humiliation.

*Smith v. Doe,* 538 U.S. at 116, 123 S.Ct. at 1160, 155 L.Ed.2d at 192 (footnote omitted). Justice Ginsburg goes on to note that one of the parties to the case who had been convicted of sexual abuse of a minor eventually completed a treatment program, remarried, and was granted custody of a minor daughter by a court after a psychological evaluation and the court's determination that he had rehabilitated himself. The courts of this state are often called upon to make custody decisions that could involve sex offenders, and quite probably have made some custodial determinations in favor of individuals who would be required to register under the Act. It does seem logically incongruent that a court has the power to make a determination that a person convicted of a sexual offense has been rehabilitated to the extent he or she can have custody of a child, but such a person has no means by which to ask for an end to registration as a sex offender.

---

(f) Prior to making a determination pursuant to the provisions of this section, the sentencing court shall request and receive a report by the board established pursuant to section two-b of this article. The report shall set forth the findings and recommendation of the board on the issue of whether the person is a sexually violent predator.

(g) At a hearing to determine whether a person is a sexually violent predator, the person shall be present and shall have the right to be represented by counsel, introduce evidence and cross-examine witnesses. The offender shall have access to a summary of the medical evidence to be presented by the state. The offender shall have the right to an examination by an independent expert of his or her choice and testimony from the expert as a medical witness on his or her behalf. At the termination of the hearing the court shall make a finding of fact upon a preponderance of the evidence as to whether the person is a sexually violent predator.

W. Va.Code § 15–12–2a (2000).

However, having noted these limitations of the statutory scheme, we are still not convinced that the appellants in this case have demonstrated a violation of their procedural due process rights. While the Legislature has the power to amend the Act in a way that would give the appellants the opportunity to show they should not have to register for life, it has not yet made any such amendment. In spite of its arguable room for improvement, we do not believe that the Act is constitutionally defective either on *ex post facto*, or procedural due process grounds. Accordingly, we must affirm the order of the lower court.

## IV.

## CONCLUSION

For the reasons stated, the order of the Circuit Court of Wood County is affirmed.

Affirmed.

Chief Justice STARCHER concurs and reserves the right to file a concurring opinion.

STARCHER, C.J., concurring.

(Filed Dec. 10, 2003)

I join the Court's unanimous opinion and write separately to highlight a distinct and important point made by the Court in its opinion—that our decision does not address the substantive due process and equal protection aspects of the Sex Offender Registration Act.

My own judgment is that in an appropriate case, substantive due process and equal protection would require that an offender who could clearly demonstrate rehabilitation be able to go before a circuit court and show that they have no risk of re-offending, and request removal of the registration requirement. That is, such an individual might have grounds to challenge provisions of the Act as applied to him or her. *See* majority opinion, 215 W.Va. at 100, 593 S.E.2d at 850. In such a case, a circuit court in the first instance should take evidence, make a full record, and rule on the substantive due process and equal protection issues. If such a case is ever brought, I hope that it is a case that has compelling equities and merit, so as not to poison the well of justice with "bad facts."