607 S.E.2d 404

**Tommy A. ROHRBAUGH, Petitioner Below, Appellee,**

v.

**STATE of West Virginia, Respondent Below, Appellant.**

**No. 31618.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 2004.

Decided Dec. 1, 2004.

Concurring Opinion of Justice Starcher Dec. 23, 2004.

Dennis DiBenedetto, Esq., Prosecuting Attorney of Grant County, Petersburg, West Virginia, Attorney for the Appellant.

John H. Treadway, Jr., Esq., Judy & Judy Attorneys at Law, Lary D. Garrett, Esq., Garrett & Garrett Attorneys at Law, Moorefield, West Virginia, Attorneys for the Appellee.

Fred J. Giggenbach, Jr., Esq., Drug and Violent Crime Assistant Prosecutor, West Virginia Prosecuting Attorneys Institute, South Charleston, West Virginia, Attorney for Amicus Curiae, West Virginia Prosecuting Attorneys Institute.

DAVIS, Justice:

The appellant herein and respondent below, the State of West Virginia (hereinafter referred to as "the State"), appeals from an order entered January 13, 2003, by the Circuit Court of Grant County. By that order, the circuit court ruled that the appellee herein and petitioner below, Tommy A. Rohrbaugh (hereinafter referred to as "Mr. Rohrbaugh"), was eligible to have his right to possess firearms restored pursuant to W. Va.Code § 61–7–7. On appeal to this Court, the State argues that the circuit court erred by restoring Mr. Rohrbaugh's firearm rights. Upon a review of the parties' arguments, the pertinent authorities, and the record designated for appellate consideration, we conclude that the circuit court erred by ruling that Mr. Rohrbaugh was entitled to the reinstatement of his right to possess firearms under W. Va.Code § 61–7–7. Accordingly, we reverse the January 13, 2003, order of the Grant County Circuit Court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On July 9, 1991, a Grant County Grand Jury indicted Mr. Rohrbaugh on forty-one felony counts of sexual assault in the third

degree,[1] and one misdemeanor count of contributing to the delinquency of a minor.[2] Pursuant to a plea agreement that was accepted by the circuit court, Mr. Rohrbaugh plead guilty to only one felony count of sexual assault in the third degree and to the misdemeanor count of contributing to the delinquency of a minor. The circuit court then sentenced Mr. Rohrbaugh to one to five years in the penitentiary for the felony and to one year in the county jail for the misdemeanor, but suspended the sentences and placed Mr. Rohrbaugh on probation for a period of five years. Mr. Rohrbaugh completed his probation on May 4, 1997, and he has repaid all court costs and his appointed attorney's fees.

Thereafter, on February 7, 2001, Mr. Rohrbaugh filed a petition in the Circuit Court of Grant County seeking restoration of certain civil rights which had been forfeited as a result of his aforementioned felony conviction, including his right to possess firearms. The State objected to the restoration of Mr. Rohrbaugh's right to possess firearms, arguing that, pursuant to the express language of W. Va.Code § 61–7–7(c) (2000) (Repl.Vol.2000),[3] Mr. Rohrbaugh's firearms right could not be restored because such restoration would violate federal law. The State additionally argued that, under W. Va. Code § 61–7–7(b),[4] Mr. Rohrbaugh could not request the restoration of his right to possess firearms provided by W. Va.Code § 61–7–

---

1. Mr. Rohrbaugh's criminal charges resulted from his romantic relationship, when he was in his early twenties, with a young lady who was approximately fifteen years old. The felony crime of third degree sexual assault, as it existed at the time of Mr. Rohrbaugh's indictment and resultant conviction, was defined as:

> (a) A person is guilty of sexual assault in the third degree when:
> (1) Such person engages in sexual intercourse or sexual intrusion with another person who is mentally defective or mentally incapacitated; or
> (2) *Such person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant.*
> (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years.

W. Va.Code § 61–8B–5 (1984) (Repl.Vol.1997) (emphasis added). This statute has since been amended, but such amendments do not impact our decision of this case. *See* W. Va.Code § 61–8B–5 (2000) (Repl.Vol.2000).

2. The misdemeanor crime of "contributing to the delinquency of a minor" involves, in relevant part:

> (a) A person who by any act or omission contributes to, encourages or tends to cause the delinquency or neglect of any child, including, but not limited to, aiding or encouraging any such child to habitually or continually refuse to respond, without just cause, to the lawful supervision of such child's parents, guardian or custodian or to be habitually absent from school without just cause, shall be guilty of a misdemeanor, and, upon conviction

thereof, shall be fined not less than fifty nor more than five hundred dollars, or imprisoned in the county jail for a period not exceeding one year, or both fined and imprisoned.

W. Va.Code § 49–7–7 (1990) (Repl.Vol.2004). *See supra* note 1.

3. It appears from the record in this case that, in considering Mr. Rohrbaugh's petition, the circuit applied the earlier, 1989, version of W. Va.Code § 61–7–7, while the parties argued the issue based upon the subsequent, 2000, version of this statute. As will be explained further in Section III.A., *infra*, the 2000 version of W. Va.Code § 61–7–7 governs these proceedings, and, except where otherwise noted, will be the version referenced in this opinion. In this regard, W. Va. Code § 61–7–7 (2000) (Repl.Vol.2000) enumerates those persons who are prohibited from possessing firearms and delineates the procedure to follow for the restoration of such rights. Subsection (c), which provides the process to follow for the restoration of one's firearm rights, directs:

> (c) Any person prohibited from possessing a firearm by the provisions of subsection (a) of this section may petition the circuit court of the county in which he or she resides to regain the ability to possess a firearm and if the court finds by clear and convincing evidence that the person is competent and capable of exercising the responsibility concomitant with the possession of a firearm, the court may enter an order allowing the person to possess a firearm *if such possession would not violate any federal law.*

(Emphasis added). The Legislature amended W. Va.Code § 61–7–7 in 2004, but such amendments do not affect our decision of the instant proceeding. *See* W. Va.Code § 61–7–7 (2004) (Supp.2004).

4. Pursuant to W. Va.Code § 61–7–7(b),

> (b) Notwithstanding the provisions of subsection (a) of this section, *any person:*

7(c) because his prior conviction of a felony sexual offense expressly foreclosed the restoration of his firearms rights. Notwithstanding the State's objections to his petition, Mr. Rohrbaugh presented evidence to establish that he is "competent and capable of exercising the responsibility concomitant with the possession of a firearm." W. Va.Code § 61–7–7(c). By order entered January 13, 2003, the circuit court determined that Mr. Rohrbaugh was entitled to the restoration of his firearm rights pursuant to W. Va.Code § 61–7–7.[5] From this ruling of the circuit court, the State now appeals to this Court.

## II.

## STANDARD OF REVIEW

■ The sole issue presented for resolution by the State's appeal is whether Mr. Rohrbaugh is statutorily entitled to the restoration of his firearm rights. Necessarily, then, we must consider the correctness of the circuit court's decision, as a whole, and with respect to the specific question of law it decided. We previously have held that

> [i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). *Accord Tennant v. Marion Health*

(1) *Who has been convicted in this state or any other jurisdiction of a felony crime of violence against the person of another or of a felony sexual offense;* or

(2) Who has been convicted in this state or any other jurisdiction of a felony controlled substance offense involving a schedule I controlled substance[ ] other than marijuana, a schedule II or a schedule III controlled substance as such are defined in sections two hundred four, two hundred five and two hundred six [§§ 60A–2–204, 60A–2–205 and 60A–2–206], article two, chapter sixty-a of this code and who possesses a firearm as such is defined in section two [§ 61–7–2] of this article shall be guilty of a felony and, upon conviction thereof, shall be confined in a state correction-

*Care Found., Inc.,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995).

■ On the more narrow issue of the circuit court's interpretation and application of W. Va.Code § 61–7–7, we apply a de novo standard of review: "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). *Accord* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to de novo review.").

Mindful of these standards of review, we now consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, the State disputes the circuit court's ruling whereby it restored Mr. Rohrbaugh's right to possess firearms in accordance with W. Va.Code § 61–7–7. In short, the State contends that the circuit court erred by restoring Mr. Rohrbaugh's firearms rights and by failing to apply W. Va.Code § 61–7–7(b), which prohibits persons convicted of felony sexual offenses from regaining their right to possess firearms. By contrast, Mr. Rohrbaugh argues that the circuit court correctly found that he is entitled to the restoration of his firearms rights in accordance with W. Va.Code § 61–7–7.[6]

al facility for not more than five years or fined not more than five thousand dollars, or both. *The provisions of subsection (c) of this section shall not apply to persons convicted of offenses referred to in this subsection or to persons convicted of a violation[ ] of this subsection.* (Emphasis added). *See supra* note 3.

5. In rendering this decision, the circuit court also addressed other matters that we need not reach in our decision of this case. *See infra* note 11.

6. At this juncture, we wish to note the appearance of Amicus Curiae in this proceeding, the West Virginia Prosecuting Attorneys Institute. We appreciate the Institute's participation in the

## A. Clarification of Applicable Law

During our consideration of this matter, it has come to the Court's attention that a very subtle, yet extremely important, discrepancy has occurred between the version of W. Va. Code § 61–7–7 that was applied by the circuit court and the version thereof that has been relied upon by the parties in their arguments before this Court. It is apparent from a scrupulous reading of the circuit court's order that, in restoring Mr. Rohrbaugh's right to possess firearms, it applied the 1989 version of this section.[7] On appeal to this Court, however, the parties base their arguments upon the 2000 version of W. Va. Code § 61–7–7,[8] which specifically references, in subsection (b), individuals, such as Mr. Rohrbaugh, who have been convicted of a felony sexual offense. The earlier version of W. Va.Code § 61–7–7 does not contain this distinction. Insofar as we have the authority to decide matters of statutory interpretation *de novo*, however, we will resolve this dilemma before proceeding to our decision of the errors specifically designated for our consideration. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415.

■ The quandary presented by this discrepancy is whether the application of the law in effect at the time of Mr. Rohrbaugh's petition for the restoration of his firearm rights, *i.e.*, W. Va.Code § 61–7–7 (2000) (Repl.Vol.2000), is constitutional or whether it violates the constitutional prohibition on the passage of *ex post facto* laws. *See* U.S. Const. art. I, § 9, ¶ 3 ("No Bill of Attainder

or *ex post facto* Law shall be passed."); W. Va. Const. art. III, § 4, in part ("No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed."). In cases similar to the case *sub judice*, we have considered whether a statute, which applies to persons who have served their sentence for a criminal conviction but which was enacted after said persons were convicted and sentenced, could nevertheless be applied to regulate their post-release conduct. *See generally Haislop v. Edgell*, 215 W.Va. 88, 593 S.E.2d 839 (2003); *Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 (2001). We concluded that the statutes in question, *i.e.*, the Sex Offender Registration Act, were not punitive in nature but rather regulatory statutes enacted within the Legislature's exercise of its police power to protect this State's citizenry and, as such, they could be applied to persons who were convicted and sentenced before their enactment. *See* Syl. pt. 5, *Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 ("The Sex Offender Registration Act, W. Va.Code §§ 15–12–1 to 10, is a regulatory statute which does not violate the prohibition against *ex post facto* laws."). *See also* Syl. pt. 5, *Haislop v. Edgell*, 215 W.Va. 88, 593 S.E.2d 839 ("The application of W. Va.Code § 15–12–4 (2000), which requires life registration for certain sexual offenders, or W. Va.Code § 15–12–5 (2001), which allows for public dissemination of certain information about life registrants, to individuals who were convicted before the Legislature added these requirements to the Sex Offend-

case *sub judice* and will consider it's position in conjunction with the parties' arguments.

7. W. Va.Code § 61–7–7 (1989) (Repl.Vol.1997) provides, in full, that

[n]otwithstanding any provision of this code to the contrary, no person who: (1) Has been convicted of a felony in this state or in any other jurisdiction; (2) has been discharged under less than honorable conditions from the armed forces of the United States; (3) has been adjudicated as a mental incompetent or has been committed involuntarily to a mental institution; (4) is an alien illegally or unlawfully in the United States; or (5) is addicted to alcohol, a controlled substance or a drug, or is an unlawful user thereof shall have in his or her possession any firearm or other deadly weapon: Provided, That any person prohibited from possessing a firearm or other deadly weapon

by the provisions of this section may petition the circuit court of the county in which he or she resides and if the court finds by clear and convincing evidence that such person is competent and capable of exercising the responsibility concomitant with the possession of a firearm or other deadly weapon the court may enter an order allowing such person to possess such weapon if such would not violate any federal statute.

Any person who violates the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars or confined in the county jail for not less than ninety days nor more than one year, or both.

8. See Section III.B., *infra*, for the complete text of W. Va.Code § 61–7–7 (2000) (Repl.Vol.2000).

er Registration Act does not violate the *ex post facto* clause of the West Virginia Constitution.").

Likewise, the statute at issue herein, W. Va.Code § 61–7–7 (2000) (Repl.Vol.2000), is also a regulatory, rather than a punitive, statute, the application of which does not violate the *ex post facto* clauses of the West Virginia or United States Constitutions. At the time of Mr. Rohrbaugh's sentencing upon his plea of guilty, the revocation of his firearm rights was neither a part of the statutorily prescribed sentence for the crimes of which he was convicted nor a condition of his sentence imposed by the circuit court. Rather, the Legislature enacted, and amended, W. Va.Code § 61–7–7 as a nonpunitive, regulatory statute within the exercise of its police power to safeguard the citizens of this State. Because W. Va.Code § 61–7–7 (2000) (Repl.Vol.2000) does not operate to increase the punishment for Mr. Rohrbaugh's enumerated offenses, it does not violate the constitutional prohibition on *ex post facto* laws.

Having resolved this discrepancy, we proceed next to the merits of this case.

### B. W. Va.Code § 61–7–7 (2000) (Repl.Vol.2000)

■ The statute applicable to these proceedings, W. Va.Code § 61–7–7 (2000) (Repl. Vol.2000), provides in full:

(a) Except as provided for in this section, no person shall possess a firearm as such is defined in section two [§ 61–7–2] of this article [9] who:

(1) Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

(2) Is addicted to alcohol;

(3) Is an unlawful user of or addicted to any controlled substance;

(4) Has been adjudicated as a mental defective or who has been involuntarily committed to a mental institution;

(5) Being an alien is illegally or unlawfully in the United States;

(6) Has been discharged from the armed forces under dishonorable conditions;

(7) Is subject to a domestic violence protective order that:

(A) Was issued after a hearing of which such person received actual notice and at which such person had an opportunity to participate;

(B) Restrains such person from harassing, stalking or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) Includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) By its terms explicitly prohibits the use, attempted use or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

(8) Has been convicted in any court of a misdemeanor crime of domestic violence.

Any person who violates the provisions of this subsection shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars or confined in the county jail for not less than ninety days nor more than one year, or both.

(b) Notwithstanding the provisions of subsection (a) of this section, any person:

(1) Who has been convicted in this state or any other jurisdiction of a felony crime of violence against the person of another or of a felony sexual offense; or

(2) Who has been convicted in this state or any other jurisdiction of a felony controlled substance offense involving a schedule I controlled substance[ ] other than marijuana, a schedule II or a schedule III controlled substance as such are defined in sections two hundred four, two hundred five and two hundred six [§§ 60A–2–204, 60A–2–205 and 60A–2–206], article two,

9. W. Va.Code § 61–7–2(11) (1989) (Repl.Vol. 2000) defines a "firearm" as "any weapon which will expel a projectile by action of an explosion."

The recent amendments to W. Va.Code § 61–7–2 have not changed this definition. *See* W. Va. Code § 61–7–2(11) (2002) (Repl.Vol.2004).

chapter sixty-a of this code and who possesses a firearm as such is defined in section two [§ 61–7–2] of this article shall be guilty of a felony and, upon conviction thereof, shall be confined in a state correctional facility for not more than five years or fined not more than five thousand dollars, or both. The provisions of subsection (c) of this section shall not apply to persons convicted of offenses referred to in this subsection or to persons convicted of a violation[ ] of this subsection.

(c) Any person prohibited from possessing a firearm by the provisions of subsection (a) of this section may petition the circuit court of the county in which he or she resides to regain the ability to possess a firearm and if the court finds by clear and convincing evidence that the person is competent and capable of exercising the responsibility concomitant with the possession of a firearm, the court may enter an order allowing the person to possess a firearm if such possession would not violate any federal law.

(Footnote added). The portion of the statute applicable to the case *sub judice* is subsection (b), which prohibits individuals who have been convicted of "a felony sexual offense," among other crimes, from possessing a firearm or petitioning for the restoration of his/her firearms rights pursuant to subsection (c). Before we may apply this language to resolve the parties' arguments, however, we must first ascertain the legislative meaning of this provision.

We long have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Thus, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. at 587, 466 S.E.2d at 438. In other words, "[w]here the language of a statute is clear and without ambiguity the plain meaning is

to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Accord Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Hence, "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted).

Applying these tenets to the statute in question, W. Va.Code § 61–7–7, it is clear that the language employed by the Legislature is not ambiguous and is capable of but one construction. In short, the relevant portion of subsection (b) plainly states that those persons who have been convicted of a felony sexual offense may neither legally possess a firearm nor petition for the restoration of their firearm rights pursuant to subsection (c). Accordingly, we hold that the plain language of W. Va.Code § 61–7–7(b) (2000) (Repl.Vol.2000) prohibits any person who has been convicted of a felony sexual offense from possessing a firearm or petitioning the circuit court of the county in which he/she resides for the restoration of his/her firearm rights.

Turning now to the facts presently before us, the individual who is requesting the restoration of his firearm rights herein, Mr. Rohrbaugh, has been convicted of the felony offense of sexual assault in the third degree.[10] While we appreciate Mr. Rohr-

10. *See supra* note 1.

baugh's candor in suggesting that the misconduct forming the basis of his conviction is not of such a violent or heinous nature as to warrant the permanent revocation of his right to possess a firearm, particularly when his primary motivation for his request is to permit him to hunt and participate in other similar recreational activities, the Legislature simply has not made allowances for the severity of the offense, the miscreant's likelihood to re-offend, or any other mitigating factors or extenuating or aggravating circumstances. Rather, the Legislature, in plain and indisputable language, has determined that those persons who have been convicted of a felony sexual offense, *any* felony sexual offense, for whatever reason, are forever barred from possessing a firearm. Insofar as Mr. Rohrbaugh has been convicted of such a crime, we find that the prohibitions of W. Va.Code § 61-7-7(b) apply to preclude him from both possessing a firearm and petitioning for the restoration of his firearm rights. Therefore, the circuit court's contrary ruling is hereby reversed.[11]

### C. Constitutionality of W. Va.Code § 61-7-7 (2000) (Repl.Vol.2000)

■ The second issue raised by this appeal concerns the constitutionality of W. Va. Code § 61-7-7. In its arguments before this Court, the State contends that W. Va.Code § 61-7-7 is constitutional whereas Mr. Rohrbaugh asserts that it unconstitutionally infringes upon his constitutionally guaranteed right to bear arms.

Governing our decision of this issue are the constitutional provisions guaranteeing individuals the right to bear arms. In this regard, Article III, section 22 of the West Virginia Constitution provides that "[a] person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use." Likewise, the Second Amendment of the United States Constitution states that "[a]

well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Despite these direct pronouncements of an individual's right to keep and bear arms, the Legislature has enacted W. Va.Code § 61-7-7, which places restrictions on an individual's exercise of such right in certain, enumerated circumstances.[12] Therefore, we must determine whether the promulgation of these restrictions is a proper exercise of legislative authority.

■ As a general rule, we have recognized that, "[t]he Constitution of West Virginia being a restriction of power rather than a grant thereof, the legislature has the authority to enact any measure not inhibited thereby." Syl. pt. 1, *Foster v. Cooper,* 155 W.Va. 619, 186 S.E.2d 837 (1972). Thus, when a statute is challenged as being unconstitutional, this Court typically accords great deference to the legislative process underlying its enactment in an effort to find constitutionality. *See State ex rel. City of Charleston v. Coghill,* 156 W.Va. 877, 883, 207 S.E.2d 113, 118 (1973) ("Acts of the Legislature are always presumed to be constitutional, and this Court will interpret legislation in any reasonable way which will sustain its constitutionality."); Syl. pt. 3, *Willis v. O'Brien,* 151 W.Va. 628, 153 S.E.2d 178 (1967) ("When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment."). More specifically,

[i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality,

---

11. Having decided this case based upon the plain language of W. Va.Code § 61-7-7(b), we need not review the circuit court's decision of other matters that are not applicable to our subsection (b) analysis. *See supra* note 5.

12. See Section III.B., *supra,* for the full text of W. Va.Code § 61-7-7.

and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965). Hence,

[c]ourts will never impute to the legislature intent to contravene the constitution of either the state or the United States, by construing a statute so as to make it unconstitutional, if such construction can be avoided, consistently with law, in giving effect to the statute, and this can always be done, if the purpose of the act is not beyond legislative power in whole or in part, and there is no language in it expressive of specific intent to violate the organic law.

Syl. pt. 29, *Coal & Coke Ry. Co. v. Conley*, 67 W.Va. 129, 67 S.E. 613 (1910).

■ With respect to the narrow issue before us concerning an individual's constitutional right to keep and bear arms, we previously have held that the Legislature may enact laws limiting one's firearm rights in conjunction with its inherent police power.

The West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State, provided that the restrictions or regulations imposed do not frustrate the constitutional freedoms guaranteed by article III, section 22 of the

*West Virginia Constitution,* known as the "Right to Keep and Bear Arms Amendment."

Syl. pt. 4, *State ex rel. City of Princeton v. Buckner*, 180 W.Va. 457, 377. S.E.2d 139 (1988). *See also* Syl. pt. 3, *In re Application of Dailey*, 195 W.Va. 330, 465 S.E.2d 601 (1995) ("It is axiomatic that the regulation and control of dangerous and deadly weapons is exclusively within the police power of the State exercised through the Legislature and not the Judiciary."). Among the restrictions to an individual's firearm rights we have upheld as being constitutionally within the Legislature's police power are prohibitions on the vehicular transportation of a loaded firearm;[13] criminal penalties for the brandishment of a firearm;[14] and misdemeanor charges for the negligent shooting, wounding, or killing of another while hunting.[15] *But see Buckner*, 180 W.Va. 457, 377 S.E.2d 139 (finding W. Va.Code § 61–7–1 (1975) (Repl. Vol.1989), which required an individual to possess a license to carry a dangerous or deadly firearm, to be an unconstitutional restriction of right to bear arms). Moreover, we have also found the instant statute, W. Va.Code § 61–7–7, to be constitutional in our recent decision in *Perito v. County of Brooke*, 215 W.Va. 178, 597 S.E.2d 311 (2004). Reviewing the application of W. Va.Code § 61–7–7(c) to persons who have received unconditional pardons for their convictions, we concluded that "the Legislature's method of achieving th[e] goal [of public safety] has been crafted narrowly so as not to offend the Constitution." *Perito*, 215 W.Va. at 183, 597 S.E.2d at 316.

Applying these tenets to the matter at hand, we find that the Legislature did not violate the West Virginia or United States Constitutions by enacting the firearm restrictions contained in W. Va.Code § 61–7–7.

**13.** *See* Syl. pt. 3, *State ex rel. West Virginia Div. of Natural Res. v. Cline*, 200 W.Va. 101, 488 S.E.2d 376 (1997) (reviewing W. Va.Code § 20–2–5(10) (1994) (Repl.Vol.1996)).

**14.** *See State v. Daniel*, 182 W.Va. 643, 391 S.E.2d 90 (1990) (examining W. Va.Code § 61–7–11 (1989) (Repl.Vol.1992)).

**15.** *See State v. Ivey*, 196 W.Va. 571, 474 S.E.2d 501 (1996) (upholding W. Va.Code § 20–2–57 (1991) (Repl.Vol.1996)).

The restrictions contained therein are a proper exercise of the Legislature's police power to protect the citizenry of this State and impose reasonable limitations on the right to keep and bear arms to achieve this end. Furthermore, while the application of W. Va.Code § 61–7–7, and specifically subsection (b) thereof, effectively precludes Mr. Rohrbaugh from exercising his constitutional right to bear arms, we repeatedly have recognized that "[t]he right to bear arms is not absolute." *Perito*, 215 W.Va. at 182, 597 S.E.2d at 315. *Accord Buckner*, 180 W.Va. at 463, 377 S.E.2d at 145. Given that " 'the prohibition against the possession or ownership of handguns by persons previously convicted of a felony or other specified crime is widely accepted,' " *Perito*, 215 W.Va. at 183, 597 S.E.2d at 316 (quoting *Buckner*, 180 W.Va. at 465, 377 S.E.2d at 147 (citations omitted)), we do not find that the restrictions contained in W. Va.Code § 61–7–7 limiting the firearm rights of such individuals to be unreasonable. While we appreciate Mr. Rohrbaugh's reiterations that allowances should be made for persons whose crimes were not inherently violent or who have not demonstrated a proclivity to re-offend, the Legislature has not made such allowances and has not demonstrated an intent to do so. Accordingly, we find W. Va.Code § 61–7–7 to be constitutional on its face and in its application to preclude Mr. Rohrbaugh from exercising his firearm rights or seeking their restoration.[16]

16. Mr. Rohrbaugh also suggests that the application of the provisions of W. Va.Code § 61–7–7 constitute unconstitutionally cruel and unusual punishment. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); W. Va. Const. art. III, § 5, in part ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence."). Insofar as § 61–7–7 does not operate to increase the punishment for the crimes referenced therein, we find that it does not constitute cruel and unusual punishment under either the West Virginia or United States Constitutions.

1. I note that we are not presented with either an equal protection or substantive due process chal-

## IV.

## CONCLUSION

For the foregoing reasons, the decision of the Circuit Court of Grant County is hereby reversed.

Reversed.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

STARCHER, Justice, concurring:

(Filed Dec. 23, 2004)

I concur in the majority opinion's holding and reasoning.

I write separately to note that the literal sweep of *W. Va.Code*, 61–7–7(b) [2000] seems to be far broader than common sense would suggest to be appropriate. I question whether the members of the Legislature who voted for this statute intended that it would bar a man who had relations with a girl when he was 19 and she was 15—and who had otherwise led a law-abiding life—from *ever* going squirrel hunting with a firearm for the rest of his life.

Nevertheless, that is the plain meaning of the statute, and in the posture of the current case, we must uphold that meaning.[1] Accordingly, I concur.

lenge to the application of the statute. As this Court noted in *Haislop v. Edgell*, 215 W.Va. 88, 99, 593 S.E.2d 839, 850 [2003] (upholding sex offender registration statute):

Additionally, we are not unmindful that the concurring opinion of Justices Souter and Ginsburg in *Connecticut Department of Public Safety* noted that they "agree with the observation that today's holding does not foreclose a claim that Connecticut's dissemination of registry information is actionable on a substantive due process principle[,]" *Id.* 538 U.S. at 8, 123 S.Ct. at 1165, 155 L.Ed.2d at 106, and that "the Court's rejection of respondents' procedural due process claim does not immunize publication schemes like Connecticut's from an equal protection challenge." *Id.* 538 U.S. at 10, 123 S.Ct. at 1166, 155 L.Ed.2d at 107.