Paul V. HEIDBRINK, Respondent,

v.

Tim SWOPE, St. Charles County
Sheriff, Appellant.

No. ED 84511.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 10, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 28, 2005.

Application for Transfer Denied
Sept. 20, 2005.

Joann M. Leykam, St. Charles, MO, for
appellant.

Peter G. Bender, Springfield, MO, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

The Sheriff of St. Charles County appeals from the trial court's judgment, which ordered him to issue a concealable-firearm permit to Paul Heidbrink. Because the trial court erroneously precluded the Sheriff from inquiring into Heidbrink's criminal convictions and military discharge based on Missouri's constitutional right to keep and bear arms, we reverse the judgment and remand the cause for further proceedings.

Section 571.090 RSMo.2000, which appears as an appendix to this opinion, establishes certain procedures and requirements necessary to the issuance of a permit to acquire a concealable firearm. The statute provides that an applicant may be disqualified from receiving such a permit by certain circumstances, including certain criminal convictions or a discharge "under dishonorable conditions" from the United States armed forces. Section 571.090.1(1). In March 2003, Heidbrink filed his application with the Sheriff to acquire a concealable-firearm permit. In this application, Heidbrink conceded that he had received a bad-conduct discharge, but denied any felony convictions. Heidbrink appended a note to the application explaining that the discharge had been the product of negotiation between him and the Navy. He claimed that, although he was now ineligible for veteran benefits, he had not been discharged "under dishonorable conditions." The Sheriff denied Heidbrink's application. Heidbrink filed an appeal of that denial in small-claims court, which also rejected his application for a concealable-firearm permit. Heidbrink then filed for a trial *de novo* in the circuit court.

In the circuit-court proceeding, which is the subject of this appeal, the Sheriff served Heidbrink with interrogatories and requests for production and admissions. In this discovery, the Sheriff sought information regarding Heidbrink's criminal convictions and his military discharge. Heidbrink objected, stating that he was asserting "his right not to be questioned regarding his bearing of arms under Article 1, section 23 of the Missouri Constitution." The Sheriff filed a motion to compel Heidbrink to respond, which the trial court denied, ruling that the discovery violated Article 1, section 23 because it was an effort to question Heidbrink's right to keep and bear arms.

At trial, Ann Eichler, the Sheriff's employee who processed Heidbrink's permit, testified that her research disclosed that Heidbrink had six arrests. She later determined that five of those arrests were resolved at the "misdemeanor level," but she was unable to determine the disposition of Heidbrink's 1986 arrest for desertion from the United States Navy. She further testified that her inability to determine this arrest's disposition was directly attributable to Heidbrink's refusal to cooperate and submit a request for information to the Navy. When Heidbrink took the stand, the Sheriff's first question was whether Heidbrink had been arrested for desertion in 1986. The trial court sustained Heidbrink's objection, ruling that "the question is an effort to question the right of [Heidbrink] to keep and bear arms, which Article 1, section 23 says shall not be questioned." In an offer of proof, the Sheriff's counsel stated that Heidbrink was arrested in 1986 and "the military discharged him under a dishonorable discharge." Heidbrink was asked no further questions. The trial court then entered

judgment for Heidbrink, ruling that no evidence of a statutory disqualification of section 571.090.1 had been admitted. The Sheriff was ordered to issue a concealable-firearm permit to Heidbrink. The Sheriff appeals that judgment.[1]

## Analysis

 "Unless otherwise defined in the text, words used in the constitution are given their plain and ordinary meaning." *City of Jefferson v. Mo. Department of Natural Resources*, 863 S.W.2d 844, 850 (Mo. banc 1993). In our interpretation of statutes, we ascertain "the intent of the legislature by the plain and ordinary meaning of the law." *Elrod v. Treasurer of Mo.*, 138 S.W.3d 714, 716 (Mo. banc 2004). We will not interpret a statute in such a manner that leads to unreasonable, oppressive, or absurd results. *Id.* Further, "It is the function of the courts to determine whether a statute purporting to constitute an exercise of the police power has a real and substantial relationship to the protection of the public health, safety, morals or welfare and whether it unjustifiably invades rights secured by the Constitution." *State ex rel. Kansas City, Mo. v. Public Service Commission of Mo.*, 524 S.W.2d 855, 862 (Mo. banc 1975).

Article 1, section 23 of the Missouri Constitution states "That the right of every citizen to keep and bear arms in defense of his home, person and property, or when lawfully summoned in aid of the civil power, shall not be questioned; but this shall not justify the wearing of concealed weapons." Although this constitutional provision establishes a right to keep and bear arms, such right is neither absolute nor unconditional. For example, Missouri courts have recognized that Article 1, section 23 does not deprive the legislature of the authority to regulate the time, place, and manner of bearing firearms. *City of Cape Girardeau v. Joyce*, 884 S.W.2d 33, 34–35 (Mo.App. E.D.1994); *see State v. Van Horne*, 622 S.W.2d 956, 957 (Mo. 1981). In addition, "Numerous jurisdictions have recognized that the constitutional right to keep and bear arms under a state constitution is not absolute and that reasonable regulatory control by the Legislature to promote the safety and welfare of its citizens uniformly has been upheld." *Mosby v. Devine*, 851 A.2d 1031, 1044 (R.I. 2004); *see* 86 A.L.R.4th 931, 1991 WL 741610. To prohibit certain persons who by their previous conduct have demonstrated their unfitness to acquire a concealable firearm is in the interest of the citizens' safety and welfare and is within the scope of the State's police power. *E.g.*, *Rohrbaugh v. State*, 216 W.Va. 298, 607 S.E.2d 404, 412–14 (2004); *People v. Blue*, 190 Colo. 95, 544 P.2d 385, 391 (1975). Further, requiring persons to obtain a permit is a reasonable method for the State to exercise this police power. *See Burton v. Sills*, 53 N.J. 86, 248 A.2d 521, 523–24, 530–31 (1968).

 Heidbrink acknowledges the constitutionality and reasonableness of a permitting system for weapons. However, he argues that Missouri's statute, to the extent it requires an applicant to answer questions as to his background, is unconstitutional since such questioning is in derogation of Missouri's constitutional right to keep and bear arms. However, the question of the statute's constitutionality is not properly before us. Heidbrink failed to raise this issue at the earliest opportunity

---

1. We decline to rule on the Sheriff's contention that a "bad-conduct discharge" is a "discharge under dishonorable conditions." The record is insufficiently developed. Obviously, the record on the time, nature, and circumstances of Heidbrink's discharge from the Navy and the 1986 arrest may be clarified on remand.

and failed to have the trial court rule on the question of the statute's constitutionality. *Sharp v. Curators of the University of Mo.*, 138 S.W.3d 735, 738 (Mo.App. E.D. 2003). In any case, Heidbrink contends, the Sheriff has misconstrued the statute. Heidbrink believes that, once an applicant declares his intent to buy a concealable firearm, the permit must issue, given our Constitution, unless the sheriff can prove, without cooperation from the applicant, a disqualifying circumstance. As a corollary of this contention, Heidbrink posits that the Sheriff's aborted discovery and examination of Heidbrink were unconstitutional. These arguments are meritless for four reasons.

First, the Missouri constitutional provision states that "the right . . . to keep and bear arms . . . shall not be questioned." This traditionally worded provision is merely establishing that such *right* is beyond question. It in no way implies that an *applicant* shall not be questioned.[2] The interpretation of this provision urged by Heidbrink is contrary to the plain and ordinary meaning of the words of our Constitution.

Second, such interpretation entirely ignores the State's police power, which is an essential attribute of government. *State ex rel. Kansas City, Mo.*, 524 S.W.2d at 865. The right to keep and bear arms does not trump the State's police power. Rather, "It is the function of the courts to determine whether a statute purporting to constitute an exercise of the police power has a real and substantial relationship to the protection of the public health, safety, morals or welfare and whether it unjustifiably invades rights secured by the Constitution." *Id.* at 862. And Missouri courts

have already held that the legislature may reasonably regulate the right to keep and bear arms. *Joyce*, 884 S.W.2d at 34–35; *see Van Horne*, 622 S.W.2d at 957. The Sheriff, of course, may then enforce the legislature's reasonable regulations.

Third, Heidbrink fails to consider the wording of Missouri's statute, a law whose constitutionality he failed to effectively challenge. Significantly, the statute denominates a person seeking a concealable-firearm permit as an "applicant." Section 571.090.1. Obviously, an "applicant" is by definition, one who must come forward with information. Further, the legislature mandated that the permit should only issue if all the statements in the application are true. *Id.* Moreover, the sheriff may require suitable identification from the applicant. Section 571.090.3. Finally, the statute allows for judicial review, with its attendant rights to discovery and examination at trial. Section 571.090.8, .12. Obviously, the legislation mandates the applicant's cooperation and allows his examination.

Fourth, Heidbrink's interpretation leads to absurd results. Again, Heidbrink argues that an applicant need only declare his intent to buy a weapon for a permit to issue, unless the sheriff can prove, without any cooperation from the applicant, a disqualifying circumstance. Thus, under Heidbrink's reading of the statute, an applicant could, for example, refuse to provide information as to his criminal convictions and mental incompetency, and it would be the Sheriff's burden to scour the records of courts, law enforcement agencies, and mental institutions around the country to try to prove the applicant's disqualifications. Clearly, this interpretation, cou-

---

**2.** To be yet more explicit, the Constitution is stating that the *existence* of a right to keep and bear arms shall be beyond question. This provision does not suggest that the *scope* of the right can never be questioned. For again, Missouri courts have held the right is not absolute. *Joyce*, 884 S.W.2d at 34–35.

pled with Heidbrink's claimed immunity from discovery and examination at trial, would render the legislature's attempt at regulation meaningless. Missouri's Constitution, like the federal constitution, is not a suicide pact. Habitual felons and psychopaths do not enjoy an unfettered constitutional right to obtain weapons without being troubled by questions about their checkered pasts.

Heidbrink's interpretation of this statute, accepted by the trial court, is untenable. The applicant has a duty to cooperate in the investigation of his fitness to obtain a concealable-firearm permit. The Sheriff has a right to discovery and examination at trial of an applicant. The trial court's rulings to the contrary were in error. The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

LAWRENCE G. CRAHAN and MARY K. HOFF, JJ., concur.

*Appendix*

Section 571.090 provides:

1. A permit to acquire a concealable firearm shall be issued by the sheriff of the county in which the applicant resides, if all of the statements in the application are true, and the applicant:

(1) Is at least twenty-one years of age, a citizen of the United States and has resided in this state for at least six months;

(2) Has not pled guilty to or been convicted of a crime punishable by imprisonment for a term exceeding one year under the laws of any state or of the United States other than a crime classified as a misdemeanor under the laws of any state and punishable by a term of imprisonment of two years or less that does not involve an explosive weapon, firearm, firearm silencer or gas gun;

(3) Is not a fugitive from justice or currently charged in an information or indictment with the commission of a crime punishable by imprisonment for a term exceeding one year under the laws of any state or of the United States other than a crime classified as a misdemeanor under the laws of any state and punishable by a term of imprisonment of two years or less that does not involve an explosive weapon, firearm, firearm silencer or gas gun;

(4) Has not been discharged under dishonorable conditions from the United States armed forces;

(5) Is not publicly known to be habitually in an intoxicated or drugged condition; and

(6) Is not currently adjudged mentally incompetent and has not been committed to a mental health facility, as defined in section 632.005, RSMo, or a similar institution located in another state.

2. Applications shall be made to the sheriff of the county in which the applicant resides. An application shall be filed in writing, signed and verified by the applicant, and shall state only the following: the name, Social Security number, occupation, age, height, color of eyes and hair, residence and business addresses of the applicant, the reason for desiring the permit, and whether the applicant complies with each of the requirements specified in subsection 1 of this section.

3. Before a permit is issued, the sheriff shall make only such inquiries as he deems necessary into the accuracy of the statements made in the application. The sheriff may require that the applicant display a Missouri operator's license or other suitable identification. The sheriff shall issue the permit within a period not to exceed seven days after submission of the properly completed application excluding Saturdays, Sundays or legal holidays. The

sheriff may refuse to issue the permit if he determines that any of the requirements specified in subsection 1 of this section have not been met, or if he has reason to believe that the applicant has rendered a false statement regarding any of the provisions in subsection 1 of this section. If the application is approved, the sheriff shall issue a permit and a copy thereof to the applicant.

4. The permit shall recite the date of issuance, that it is invalid after thirty days, the name and address of the person to whom granted, the nature of the transaction, and a physical description of the applicant. The applicant shall sign the permit in the presence of the sheriff.

5. If the permit is used, the person who receives the permit from the applicant shall return it to the sheriff within thirty days after its expiration, with a notation thereon showing the date and manner of disposition of the firearm and a description of the firearm including the make, model and serial number. The sheriff shall keep a record of all applications for permits, his action thereon, and shall preserve all returned permits.

6. No person shall in any manner transfer, alter or change a permit, or make a false notation thereon, or obtain a permit upon any false representation, or use, or attempt to use a permit issued to another.

7. For the processing of the permit, the sheriff in each county and the city of St. Louis shall charge a fee not to exceed ten dollars which shall be paid into the treasury of the county or city to the credit of the general revenue fund.

8. In any case when the sheriff refuses to issue or to act on an application for a permit, such refusal shall be in writing setting forth the reasons for such refusal. Such written refusal shall explain the denied applicant's right to appeal and, with a copy of the completed application, shall be given to the denied applicant within a period not to exceed seven days after submission of the properly completed application excluding Saturdays, Sundays or legal holidays. The denied applicant shall have the right to appeal the denial within ten days of receiving written notice of the denial. Such appeals shall be heard in small claims court as defined in section 482.300, RSMo, and the provisions of section 482.300, 482.310 and 482.335, RSMo, shall apply to such appeals.

9. A denial of or refusal to act on an application for permit may be appealed by filing with the clerk of the small claims court a copy of the sheriff's written refusal and a form substantially similar to the appeal form provided in this section. Appeal forms shall be provided by the clerk of the small claims court free of charge to any person:

[Appeal form]

10. The notice of appeal in a denial of permit appeal shall be made to the sheriff in a manner and form determined by the small claims court judge.

11. If at the hearing the person shows he is entitled to the requested permit, the court shall issue an appropriate order to cause the issuance of the permit. Costs shall not be assessed against the sheriff in any case.

12. Any person aggrieved by any final judgment rendered by a small claims court in a denial of permit appeal may have a trial de novo as provided in sections 512.180 to 512.320, RSMo.

13. Violation of any provision of this section is a class A misdemeanor.